RUTH C. RANDOLPH, PETITIONER-RESPONDENT, v. WO-
MAN'S CLUB OF BLOOMFIELD, RESPONDENT-PROSE-
CUTOR.

Submitted May 6, 1941—Decided July 25, 1941.

Before Justices BODINE, PERSKIE and PORTER.

For the prosecutor, *McCarter & English* (*Verling C. Ente-
man,* of counsel).

For the respondent, *David Roskein* (*Harry Cohn,* of
counsel).

The opinion of the court was delivered by

PERSKIE, J.   The primary question requiring decision in
this workmen's compensation case is whether respondent—the
employee—was correctly held to be entitled to partial perma-
nent disability payments.

Ruth C. Randolph, petitioner below and respondent here,
is a married woman of 49 years of age.  With her husband
she had been employed as a resident caretaker by the Woman's
Club of Bloomfield, respondent below and prosecutor here.
On March 24th, 1937, in pursuance of her duties, the peti-
tioner and her husband were moving a heavy upright piano.
After moving the piano, petitioner set up five tables.  She
testified that these tables seemed "particularly heavy" and
she experienced a "peculiar headache  *  *  *  a sort of dull
headache, nothing like I ever had before."  Petitioner there-
upon grew nervous and ill and after proceeding to her living

quarters on the third floor of the building, "collapsed on the bed with a very, very severe headache." Following the administration of aromatic spirits of ammonia by her husband, Dr. Dunn was summoned.

Dr. Dunn testified that he found the respondent in bed; that her heart was beating at a rate of 120 a minute; that her face was flushed; that she was very weak; that the "apex of her heart was over the sixth interspace and there was a mitral regurgitant murmur present. Blood pressure was 75, that was 115/175." Dr. Dunn treated the patient for about six months. Although he at first diagnosed her condition to be a "paroxysmal tachycardia," further study led him to alter his diagnosis to "an effort syndrome" causing an "acute dilation" of the heart.

Respondent was confined to bed for almost four weeks. She was treated by Dr. Dunn until November of 1937 at which time she "stopped coming" to see him. Dr. Dunn had advised her strongly against the doing of any laborious work and respondent was at no time able to perform any of her duties for prosecutor. She left the prosecutor permanently on July 1st, 1937. She has done no heavy housework since that time and has refrained from walking up and down stairs.

Respondent filed her claim petition against prosecutor on May 26th, 1937. After hearings on December 13th, 1939, and January 3d, 1940, the deputy commissioner determined that respondent should recover temporary disability from July 1st, 1937, to January 1st, 1938, at $10 per week, in addition to reimbursement for medical expenses. No permanent disability was allowed. Upon respondent's appeal to the Essex County Court of Common Pleas, for the purpose of getting an award for permanent disability, Judge Hartshorne, after reviewing the testimony, found that there had been *"a permanent* accidental *effect* upon the heart, disabling petitioner from performing her usual occupation, and to the extent of forty per cent., upon the basis of wages to petitioner of $10 a week." The order of the bureau was reversed accordingly. Prosecutor thereupon obtained a writ of *certiorari* and here seeks to have reversed the order for reversal and rule for judgment of the Pleas.

1. Prosecutor argues that the accident on May 24th, 1937, did not arise out of and in the course of respondent's employment. It is clear that an employee who suffers an accidental strain of the heart by doing work which calls for unusual strain, effort or exertion, may recover compensation under our act. *Bernstein Furniture Co.* v. *Kelly,* 114 *N. J. L.* 500; 177 *Atl. Rep.* 554; *affirmed,* 115 *N. J. L.* 500; 180 *Atl. Rep.* 832; *Hentz* v. *Janssen Dairy Corp.,* 122 *N. J. L.* 494; 6 *Atl. Rep.* (*2d*) 409; *Cf. Kuropata* v. *National Sugar Refining Co.,* 126 *N. J. L.* 44; 17 *Atl. Rep.* (*2d*) 288. Respondent testified that the piano which she was moving, when she had the accident, "was quite heavy; it took two people." It stood on large club casters which were not in very good condition and thus it was "very hard to move." Dr. Dunn, the treating physician, testified that he felt "that there was a causal relationship between the effort this woman expended in moving the piano, and the condition for which [he] treated her." Dr. Lowy and Dr. Beling, specialists who had examined the respondent, both testified that there was a direct causal relationship between the moving of the piano and the later heart condition. In accordance with the findings reached by both the Bureau and the Pleas, we, too, find that petitioner suffered a compensable accident.

2. Prosecutor argues that petitioner suffered no partial permanent disability. Dr. Dunn, however, the treating physician, who had examined the petitioner two weeks before the hearing and also the day before the hearing, testified that although the stethescopic examination revealed a normal heart, he had nevertheless "still instructed her that any over exertion might bring a recurrence of her same condition." Dr. Dunn also testified that he had never discharged the respondent as a patient; but that after six months of treatment "she just stopped." He estimated her permanent disability to be about 50%.

Dr. Otto Lowy, a specialist in pathology and diagnosis, examined respondent twice—once on September 24th, 1937, and once on October 17th, 1939. The first examination consisted of a complete physical, fluoroscopic, electrocardiographic and laboratory examination. From this the doctor

discovered that respondent's left auricle was enlarged, that she had a ventricular extra systole, and a tachycardia (rapid pulse rate). The second examination revealed the same thing as the first examination plus a prominent aortic second sound. Prosecutor's argument that the electrocardiograph was inadmissible as hearsay because not prepared by Dr. Lowry is without foundation. The test was made under his direction and supervision and it was he who interpreted the results shown. In addition, Dr. Lowy testified that he did not think that respondent was able to compete in the labor market for a job "as a physical functioning unit."

Dr. Beling, a specialist in nervous and mental diseases, who examined the respondent on December 27th, 1939, testified that his examination disclosed "increased reflexes, a marked vasomotor instability, and an asthenic condition, general asthenic condition * * * neurocirculatory instability, and vasomotor instability." He also testified that he thought respondent to be "about 50% disabled from the accident."

From all of the above testimony it is clear that respondent suffered as was found by the Court of Common Pleas, a partial permanent disability from the accident on March 24th, 1937. True, prosecutor did produce two medical witnesses. The first of these, Dr. Vanderhoff, had examined respondent about one month after the accident in question. Although he found the pulse rate to be 100 and an extra systole in the heart, he concluded that the heart was normal and that there was no permanent disability. Dr. Vanderhoff, however, also described his belief to be that women patients of 49 years of age, who, as petitioner, have never been accustomed to do heavy work, should move heavy pianos if they desire some type of exercise. This latter recommendation, clearly contrary to accepted medical treatment, suggests the futility of his testimony. Dr. Mullin's testimony to the effect that the respondent's heart was normal and that she suffered no permanent disability carries little weight in the light of all the other testimony. Dr. Mullin examined respondent only once; he is not a cardiologist nor a specialist of any sort; he made no laboratory tests; he did not fluoroscope nor electrocardiograph petitioner. In light of the testimony of the

treating physician, and the testimony supplied by Dr. Lowy and Dr. Beling, both of whom are specialists, the testimony of Dr. Mullin necessarily lacks much, if any, probative value.

3. Prosecutor argues that it was unjustly deprived of an opportunity to take an electrocardiograph of the respondent.

After the opinion of Judge Hartshorne, but before the signing of the order, prosecutor applied for an order to remand the case so that it might have taken an electrocardiograph of the respondent. This application was denied. The writ of *certiorari* was allowed by Mr. Justice Parker on January 7th, 1941, upon the condition that there be filed the affidavit by Verling C. Enteman, dated December 18th, 1940. The contents of this affidavit pointed out that a Dr. Satschwell, who had taken an electrocardiograph of respondent on behalf of prosecutor had died; upon application in the Bureau for an order for a subsequent examination the deputy commissioner had refused to grant the order because of his decision in favor of the prosecutor in regard to permanent disability. The affidavit also stated that these facts were related at the trial in the Pleas. Concededly, no application for the order, however, was made to Judge Hartshorne until after the filing of his opinion and prior to the signing of the order.

The above stated contents of this affidavit are not here admissible to prove the facts stated therein. The evidential force of affidavits employed upon the application for a writ of *certiorari* expires with the granting of the writ; the facts alleged therein can be brought before the court only by depositions taken on notice, or, perhaps, by stipulation. *Cf. Jordan* v. *Hoffman,* 126 *N. J. L.* 100 (see cases collated at *p.* 102); 18 *Atl. Rep.* (2d) 607. The only facts in the record concerning this matter which may be properly considered here indicate that prosecutor, in the trial before the Bureau, expressly rested its case and stated that it was "not going to request the other examination." Moreover, the prosecutor cannot chance the outcome of the trial before it comes forth with all of its evidence. The policy of the law is, and always has been, to force litigants to the fullest preparation of their cases before trial and to the fullest presentation of their cases

at trial. *Cf. Christie* v. *Petrullo,* 101 *N. J. L.* 492, 495; 128 *Atl. Rep.* 853.

4. Prosecutor argues that the amount of respondent's wages was determined contrary to the provisions of the act.

*R. S.* 34:15-37 provides that the term wages "shall be construed to mean the money rate at which the service rendered is recompensed *under the contract of hiring* in force at the time of the accident, and shall not include gratuities received from the employer or others * * *." The testimony is clear that a contract of employment was entered into in May of 1936. That contract, in evidence, clearly stated the various duties of respondent and her husband and specifically enumerated the amounts to be paid in consideration of their various services. Testimony was adduced to show how much these services brought. The provisions of *R. S.* 34:15-37 relating to wages, were, therefore, correctly applied by both the Bureau and the Pleas.

*R. S.* 34:15-37 also provides that "Board and lodging when furnished by the employer as part of the wages shall be included and valued at five dollars per week, *unless the money value of such advantages shall have been otherwise fixed by the parties at the time of hiring."* The value of the lodgings furnished to respondent and her husband was determined by a real estate appraiser. This value was accepted by both the respondent and prosecutor and was properly employed by both the Bureau and the Pleas as a basis for determining the amount of compensation. There was thus no error committed in the application of *R. S.* 34:15-37.

5. Prosecutor argues, in its brief, that the respondent employee was improperly awarded temporary compensation for part of the month of November and all of the month of December for the year 1937. Prosecutor bases this argument upon the assumption that respondent was not, during the stated periods, disabled because she discontinued her visits to Dr. Dunn in November of 1937. This assumption is without foundation. The reasons for the discontinuance of the visits may be numerable; and, as we have seen, Dr. Dunn, himself, testified that he had never discharged the respondent as a patient. "She just stopped" coming to him.

Prosecutor further argues that the allowance of temporary disability for part of November and for all of December, 1937, and the assessment of medical and legal fees against prosecutor indicates that respondent was given "every possible consideration" and "was given the benefit of every possible doubt; and, therefore, would have been given permanent disability benefits if such [were] at all justified." This is all beside the point. Respondent either is or is not, under the circumstances, entitled to permanent disability payments. Moreover, in the Pleas, prosecutor argued for an affirmance of the judgment in the Bureau and here prosecutor's entire argument is that respondent did not, as claimed, suffer a permanent disability to her heart.

The judgment of the Pleas is therefore affirmed, and the writ is dismissed, with costs.