12 N.J. Super. 147 (1951)
79 A.2d 88
FLOYD BARNHART AND LAWRENCE DeANGELIS, PLAINTIFFS-RESPONDENTS,
v.
UNITED AUTOMOBILE, AIR-CRAFT, AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW-CIO) INTERNATIONAL UNION AND AMALGAMATED LOCAL 669, CIO, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 5, 1951.
Decided March 1, 1951.
*150 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Martin J. Loftus argued the cause for the plaintiffs-respondents.
Mr. Samuel L. Rothbard argued the cause for the defendants-appellants (Messrs. Rothbard, Harris & Oxfeld, attorneys; Mr. Abraham L. Friedman, of counsel).
*151 The opinion of the court was delivered by EASTWOOD, J.A.D.
We are of the opinion that the judgment of the Superior Court, Chancery Division, directing the reinstatement of the plaintiffs as members of United Automobile, Aircraft, Agricultural Implement Workers of America (UAW-CIO) International Union and Amalgamated Local 669, UAW-CIO, must be affirmed, on the ground that the international convention was without authority to expel them.
It is not necessary to engage in a detailed factual recital with respect to the charges made against the plaintiffs. A statement thereof may be found in the opinion of Judge Grimshaw, reported in 10 N.J. Super. 357 (Ch. Div. 1950). Suffice it to say that the plaintiffs, Barnhart and DeAngelis, president and financial secretary-treasurer, respectively, of Local 669, were charged with offering a bribe to one Eugene Zoppo (a member of Local 669 and international representative assigned to assist Local 950, whose members were employees of the Rowe Manufacturing Company), to secure a reduction in the wage rates of the employees of the Rowe Company when it changed the model of a cigarette vending machine. On December 20, 1948, the plaintiffs were tried and acquitted by the trial committee of Local 669 and their verdict was approved by the local union. Thereafter, in July, 1949, Local 950 presented the same charges to the executive board of the international convention, which in turn referred the matter to its grievance committee. At the outset of the trial by this committee, the plaintiffs entered a special appearance, protesting the committee's authority to hear and determine the charges and thereupon left the meeting. Notwithstanding this protest, the grievance committee proceeded with the hearing and reported to the convention their findings of plaintiffs' guilt, recommending expulsion. The resolution expelling the plaintiffs was adopted by an almost unanimous vote of the convention. At the conclusion of the trial of the present action to set aside the expulsion of the plaintiffs, the Chancery Division determined that "* * * the expulsion of the plaintiffs from the defendant union was not accomplished in the *152 manner provided by the Union Constitution" and directed their reinstatement.
The constitution of the international union with which we are concerned was adopted at Atlantic City in November, 1947. In July, 1949, the convention adopted a constitution at Milwaukee, Wisconsin, wherein "In case of extreme emergency, and when it appears to the International Executive Board that irreparable injury may result to the International Union or to a subordinate body * * *" the executive board is vested with authority to originate and try charges against members. However, the issue here is not affected by the 1949 constitution.
The pertinent provision of the 1947 constitution is contained in sections 1 and 2, Article 48, viz.:
"All charges against a member of the Union with the violation of any of the provisions of this Constitution, or with conduct unbecoming a member of the Union, must be specifically set forth in writing and signed by the member making the charge.
Charges must be submitted to the Recording Secretary of the Local Union or of the Shop Organization, as the case may be, within sixty (60) days of the time the complainant becomes aware of the alleged offense, * * *"
Courts are loath to interfere with the internal management of an unincorporated, voluntary association. The right of a voluntary association to interpret and administer its own rules and regulations is as sacred as the right to make them, and there is no presumption against just and correct action or conduct on the part of its supervising or appellate authorities and tribunals. The expulsion of a member, if for cause within the jurisdiction of the tribunal of the association by which it is pronounced, after notice and opportunity to be heard and a trial conducted in accordance with the constitution, laws and regulations of the association, is conclusive upon the civil courts. Dragwa v. Federal Labor Union No. 23070, 136 N.J. Eq. 172 (Ch. 1945). While it is clear from an examination of the authorities that a trade union may discipline and even expel a member, such action cannot be arbitrarily exercised, but must follow the procedure specifically *153 provided for in the laws of the association. Walsh v. International Alliance, &c., 22 N.J. Misc. 161 (Ch. 1944); Gordon v. Tomei, 19 A.2d 588 (Super. Ct. Pa. 1941); Sweetman v. Barrows, 263 Mass. 349, 161 N.E. 272, 62 A.L.R. 311 (Mass. Sup. Jud. Ct. 1928); 25 R.C.L. 58; Dragwa v. Federal Labor Union No. 23070, supra. Membership in an association or society is based upon the implied, if not express, condition of loyalty. The power of expulsion is included in what may be denominated the police power of such an organization, which is derived from the law of self-preservation. It must have the power to relieve itself of its discordant elements, in order that harmony may prevail and, therefore, it has the right to provide by its constitution and by-laws, for the expulsion of members transgressing their reasonable provisions. See DeMille v. American Federation of Radio Artists, 31 Cal. 2d 139, 187 P.2d 769 and 175 A.L.R. 382, pp. 390-393, 506-523 (Cal. Sup. Ct. en banc 1947).
The settled rule in New Jersey is that the constitution is a contract between the international union and the local union and the members thereof. "The members of the local may all, of right, insist that their affairs be managed in the manner therein prescribed." Harris v. Geier, 112 N.J. Eq. 99 (Ch. 1932). The procedure for the trial of charges made against a member must be that prescribed by the constitution, and unless it is followed the penalty imposed upon the member will be set aside. Blanchard v. Newark Council, 77 N.J.L. 389 (Sup. Ct. 1909); Gaestel v. Brotherhood of Painters, &c., 120 N.J. Eq. 358, 362 (Ch. 1936). So long as such an association adheres to such rules and regulations, the member must likewise act in accordance therewith. When, however, the association departs from the letter and spirit of the contract, it would be without reason to say that the member cannot secure relief from such unauthorized action. The contract, which is the constitution, rules and regulations, operates alike on both the association and the member. Rueb v. Rehder, 24 N.M. 534, 174 P. 992 (Sup. Ct. N.M. 1918); Leo v. Local Union No. 612 I.U.O.E., 26 Wash.2d 498, 174 P.2d 523, 168 A.L.R. 1452 (Sup. Ct. Wash. 1946).
*154 The appellants argue that the trial resulting in an acquittal of the plaintiffs by the trial committee of Local 669 was a farce and intended solely as a whitewash of the charges in question; that it was invalid, in that it did not comply with the pertinent provisions of the constitution; that the action of the trial committee of Local 669 did not bar action by the international convention and its grievance committee; that the international convention was possessed of inherent authority to try the plaintiffs and expel them in view of the fact that the charges were made by another union local; and that the almost unanimous adoption by the convention of the resolution of expulsion was in effect equivalent to an amendment of the constitution, thus sanctioning the action of the international body.
No direct attack has been made with respect to the trial and acquittal of the plaintiffs by Local 669. Therefore, we are not called upon to review the validity or effect thereof. However, we point out here that the only method by which a person can become a member of the international union is through his membership in a local; in other words, there is only one membership. The eligibility of and election or rejection of an applicant for membership in the local union is subject solely to the action of the local.
The appellants contend that the international convention possessed inherent power to expel the plaintiffs. A quality or attribute is said to be "inherent" when it is firmly or permanently contained or joined; infixed; indwelling; involved in the constitution or central character of anything. Fackrell v. City of San Diego, Cal., 157 P.2d 625, 629 (Sup. Ct. Cal. 1945). Cf. concurring opinion of Mr. Justice Green in Meehan v. Excise Commissioners, 75 N.J.L. 557, 70 A. 363 (E. & A. 1908). In seeking an answer to this contention, it will be enlightening if we examine the constitution. In doing so, we find that it carefully and comprehensively sets up the rights and responsibilities of the members, the respective authority of the local unions, amalgamated unions, international officers, the international convention and the committees created to effectuate the objects thereof. To demonstrate *155 the comprehensiveness of the constitution, we call attention to the following provisions: sections 1 and 2, of Article 48, specifically provide that "all charges" against a member must be "* * * signed by the member making the charges" and must be "* * * submitted to the Recording Secretary of the Local Union or of the Shop Organization," and tried before a trial committee elected by the local union. Under section 2 of Article 12, the international executive board is empowered to revoke charters and reorganize subordinate bodies pursuant to the specific provisions set forth therein. The trial of "an officer or executive board member at large of an amalgamated local union" is prescribed in section 9, Article 48. The trial of charges against international officers is governed by the provisions of Article 29. Articles 32 to 47 concern the local unions and Article 48 deals with the "trial of members." Article 48 contains 16 sections setting forth the manner in which charges against members shall be made, the selection of a trial committee, the right of the accused to appear and in the event of a conviction, the right of appeal to the next meeting of his amalgamated local and a further appeal to the international executive board.
It is significant that the word "must" is used in sections 1 and 2, Article 48, where charges are presented and filed against members. It is one of the recognized standards of statutory construction that the word "must" ordinarily is used in a mandatory or obligatory sense. There is no apparent reason why the term should not be given this interpretation in the present instance. Gordon v. Tomei, supra. It is clear from section 2, Article 48, that there is no alternative; that the charges must be filed with the recording secretary of the local union, preliminarily to a trial thereof in conformity with the prescribed procedure. It may, perhaps, be true, that if the constitution did not provide any method or procedure for the trial of members, the international body might well be possessed of inherent power to deal with recalcitrant members to the end of enforcing its rules and regulations and to preserve its integrity and existence. However, in the 1947 constitution there is a complete absence of any provisions vesting *156 the international officers, its executive officers, grievance committee or the convention with any original jurisdiction to discipline or expel members. On the contrary, the constitution quite carefully and specifically sets up the procedure for presenting and filing charges against a member, for the trial thereof and for appeals. We are convinced that the omission of an alternative provision in the 1947 constitution to discipline or expel members, was purposely deliberate. We conclude, therefore, that in the circumstances here, the international convention was not possessed of any inherent power of original jurisdiction.
The appellants argue further that we should hold that the interpretation by the chief executive officers of the international union that the issue was not an intra-local one and, therefore, Article 48 did not apply, but that the existing practice where one local complains against another local before the international convention and its grievance committee, did apply. We are in disagreement with this contention. It is undisputed that although the charges originated with one Eugene Zoppo, who is a member of Local 669, they were presented to the international body by Local 950. It is clear, however, that the charges and the trial thereof involved the plaintiffs as individual members and not Local 669. At the argument, the appellants conceded that they were not able to cite any other instance or case where the international convention had exercised original jurisdiction to try members of local unions. Thus, there is no proof of an established practice or long standing interpretation by the international officers applicable to this issue. The cases cited in support of appellants' argument are not analogous.
The argument of the appellants that the almost unanimous vote of the convention expelling the plaintiffs is tantamount to an amendment of the constitution, is specious, indeed. No extended discussion is necessary to establish the universally accepted rule that a constitution may be amended only by meticulously following the procedure prescribed in the constitution itself. The constitution under consideration here sets forth the required amendatory procedure (Article *157 3 and section 15, Article 8), but no action to conform therewith was taken prior to the trial and expulsion of the plaintiffs.
While the question as to whether the trial judge erred in refusing to admit certain alleged original recordings of telephone conversations between the plaintiffs and Eugene Zoppo, does not affect our determination, we think it may be profitable to comment thereon. Zoppo testified as to the telephone conversations and that recordings were made thereof in his presence, and stated that at the conclusion of each conversation, the recording was read to him and he verified its correctness. The witness Cranmore corroborated Zoppo's testimony, stating that he sat near the telephone and heard directly about 75% of each conversation. The recordings were offered in evidence, but the court refused to admit them on the authority of State v. Simon, 113 N.J.L. 521 (Sup. Ct. 1934); affirmed, on opinion of Supreme Court, 115 N.J.L. 207 (E. & A. 1935). At the argument it was not seriously disputed by counsel for the plaintiffs that the recordings, properly identified and their accuracy verified by competent testimony, were admissible. The plaintiffs argued, however, that the appellants had failed to lay the proper foundation for their admission. In the Simon case, the Supreme Court ruled:
"We know of no case and counsel cite none, in which a phonograph record of an alleged conversation was admitted in a court of law as evidence thereof. One good reason may be that it cannot be cross-examined as to whether the whole conversation was reproduced. Such machine may be thrown in and out of gear at the will of the operator."
Wigmore criticizes the Simon opinion; 2 Wigmore on Evidence (3rd ed.), p. 791. With competent supporting proof, our courts and other jurisdictions have admitted into evidence telephone conversations, Burket v. Ellis, 105 N.J.L. 560 (E. & A. 1928); photographs, Ellis v. Rosenberg, 15 N.J. Misc. 37, 188 A. 499 (Sup. Ct. 1936); phonograph records, 32 C.J.S., § 709, p. 613, Note 98; X-rays, Greco v. Schmidt, 101 N.J.L. 554 (E. & A. 1925); electrocardiographs, Randolph v. Woman's Club of Bloomfield, 127 N.J.L. 49 (Sup. *158 Ct. 1941); dictagraph records, State v. Dougherty, 86 N.J.L. 525 (Sup. Ct. 1915); dictaphone records, U.S. v. Goldman, 118 Fed.2d 310 (2d C.C.A.); motion pictures, Morris v. E.I. DuPont deNemours & Co., 346 Mo. 126, 139 S.W.2d 984, 129 A.L.R. 361. The opinion in the Simon case indicates that the admission of the recordings was denied largely because the foundation for purposes of impeachment had not been laid on cross-examination. Query: Where there is competent supporting testimony as to the relevancy and accuracy of recordings of telephone conversations, should they not be admissible?
As we indicated at the outset, our determination does not comprehend the guilt or innocence of the plaintiffs. Therefore, no implication is to be drawn that we condone such alleged misconduct, if true. If labor unions are to achieve the worthy purposes for which they are organized, we think it will be conceded that the unions must free themselves of all members whose misconduct may be violative of their by-laws and constitution and their duty of loyalty, and thus tend to thwart the attainment of their lawful objectives.
The judgment of the Chancery Division is affirmed, with costs.