104 N.J. Super. 265 (1969)
249 A.2d 631
JAMES JENNINGS, HERMAN VERTORANO AND JAMES LONERGAN, INDIVIDUALLY AND ON BEHALF OF ALL EMPOYEES OF M & M TRANSPORTATION COMPANY SIMILARLY SITUATED, AS A CLASS, PLAINTIFFS,
v.
M & M TRANSPORTATION COMPANY, A CORPORATION AUTHORIZED TO DO BUSINESS IN NEW JERSEY, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AN UNINCORPORATED LABOR ORGANIZATION, AND TRUCK DRIVERS AND CHAUFFEURS UNION LOCAL NO. 478, AFFILIATED WITH THE I.B. OF T., C., W., & H. OF A., AN UNINCORPORATED LABOR ORGANIZATION, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided January 27, 1969.
*268 Mr. John A. Craner for plaintiffs (Messrs. Craner and Brennan, attorneys).
Mr. Herbert New and Mr. Arthur Liberstein of the New York Bar for defendant M & M Transportation Company (Messrs. Brenner, New & Brenner and Mr. Herbert Burstein of the New York Bar, attorneys).
Mr. Edward A. Cohen and Mr. Florian Bartosic of the Washington, D.C. Bar for defendant International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Messrs. Beckerman and Franzblau and Mr. David A. Previant of the Wisconsin Bar, attorneys).
Mr. Thomas L. Parsonnet for defendant Truck Drivers and Chauffeurs Union Local 478 (Messrs. Parsonnet, Parsonnet & Duggan, attorneys).
MINTZ, J.S.C.
Plaintiffs are employees of defendant M & M Transportation Company (hereinafter M & M) and also members of defendant Truck Drivers and Chauffeurs Union Local No. 478 (hereinafter Local 478). They have instituted this action to specifically enforce section 1 (c) (1) of their collective bargaining agreement as interpreted by an arbitrator's award. In effect, they seek confirmation of the *269 arbitration award. They bring this action pursuant to section 301 of the Labor-Management Relations Act, 1947. 29 U.S.C.A. § 185.
Initially, plaintiffs contended that Local 478 had violated its duty of fair representation owed them, thereby entitling them to maintain this action under the doctrine of Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Since Local 478 has adopted the position of plaintiffs and cross-claims for the same relief, the issue as to whether it did in fact violate its duty of fair representation, thus giving plaintiffs standing to sue, is rendered moot.
The International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereinafter International), comprising several hundred affiliated subordinate bodies, is governed by the provisions of the International constitution. Local 478 of Newark, New Jersey, and Local 773 of Allentown, Pennsylvania are local unions affiliated with and controlled by the International constitution. Local 478 and Local 773 have separate work contracts with defendant employer M & M, a motor carrier which maintains terminals at Newark, New Jersey, and Allentown, Pennsylvania, and which is engaged in the transportation of property in interstate commerce.
Local 773 and M & M are parties to the 1964-1967 and 1967-1970 National Master Freight Agreement and to the Central Pennsylvania Over-The-Road Motor Freight Supplemental Agreement which cover a multi-union, multi-employer bargaining unit. When M & M opened its Allentown Terminal in 1962, members of Local 773 were assigned deliveries and/or pickups for M & M in New Jersey west of Route 206. Local 773 had been performing such work in New Jersey for other employers for over 25 years.
Local 478 and M & M were parties to a 1964-1967 collective bargaining agreement which, in part, sets out those areas in which Local 478 would perform company work. In 1967 Local 478 allegedly learned for the first time that *270 Local 773 had been making deliveries and/or pickups in New Jersey west of Route 206. Thereupon Local 478 filed a grievance with M & M which was processed to arbitration under section 16 of the Local 478-M & M contract. Local 478 and its employer, M & M, were the only parties who appeared before the arbitrator, Daniel House. The precise issue presented was:
"Is the Employer violating the Agreement by making deliveries and/or pickups in certain New Jersey points through Employer's Allentown terminal? If so, what shall be the remedy?"
The arbitration award, rendered July 7, 1967, held that M & M was in violation of its 1964-1967 collective bargaining agreement with Local 478 by permitting its Allentown Terminal employees to make deliveries and/or pickups in New Jersey in the area in which Local 478, by contract, was entitled to the work. Significantly, the arbitrator made the following further conclusion in his opinion and award:
"Dispute Between Local 478 and Local 773?
It is possible that the events involved in this case or events following the Arbitrator's Award in this case could lead to a jurisdictional dispute; but no such dispute is before the Arbitrator here. The only dispute before the Arbitrator in this case is the alleged contract violation spelled out in the submission agreement recited at the beginning of this Opinion. The Arbitrator has the authority and the obligation under the terms of the current Agreement between the parties to decide that dispute."
Following the rendition of the award Local 773, pursuant to article XII, section 12 of the International constitution, properly filed a jurisdictional dispute claim with the general executive board of International, asserting that past practice dictated that Local 773 was entitled to the work assignment in dispute. Article XII, section 12 of the International constitution expressly provides that where two or more local unions are in dispute concerning jurisdiction, there shall be no work stoppage of the involved operation but such controversy *271 shall be submitted to International for determination. A complete hearing was held by International with both Local 478 and Local 773 participating. The employer, M & M, though not a party to such proceeding, indicated its willingness to be bound by whatever decision was forthcoming.
On January 26, 1968 the general executive board of International adopted the recommendations of the hearing panel and held that Local 773 was entitled to perform the work in question. M & M, which had previously adhered to the arbitrator's award by assigning only employees of Local 478 to the disputed work, now reversed this practice, affirmed its prior statement to be bound by International's determination, and reassigned the work to Local 773. On February 19, 1968 plaintiffs instituted the present action.
The 1964-1967 contract between Local 478 and M & M expired on August 31, 1967, over a month after the arbitrator's award was promulgated and prior to the conflicting jurisdictional determination by International. Local 478 subsequently became a party to the 1967-1970 National Master Freight Agreement and the New York-New Jersey Supplement. After the decision by International and the institution of this suit, Local 478 entered into the 1967-1970 rider to that agreement which contained language identical to section 1 (c) (1) of the original contract. Plaintiffs argued that Local 478 relied upon arbitrator House's interpretation of section 1 (c) (1) when it entered into the rider agreement, but no testimony was offered in support of same. International asserted that Local 478 and M & M negotiated the rider agreement with full knowledge of the jurisdictional award and that such award became an implied term of the contract, or at the very least precluded Local 478 from negotiating any contractual provision in conflict with the jurisdictional award. However, it appears that in executing the rider agreement Local 478 did not intend to be bound by the jurisdictional award. The fact that the rider agreement *272 using the identical language contained in the earlier agreement was executed after the institution of this suit is not persuasive in resolving the issues presented in this litigation.
It was urged that Local 773 is an indispensable party to this proceeding, and not having been joined, the action should be dismissed. Whether a party is indispensable depends upon the circumstances of the particular case. As a general proposition, a party is not truly indispensable unless he has an interest inevitably involved in the subject matter before the court and a judgment cannot justly be made between the litigants without either adjudging or necessarily affecting the absentee's interest. Allen B. Du Mont Labs, Inc. v. Marcalus Mfg. Co., 30 N.J. 290, 298 (1959). The nature and character of the claim in an action determines the identity and classification of the parties as necessary or indispensable. Insurance Company of North America v. Allied Crude Vegetable Oil Refining Corp., 89 N.J. Super. 518 (Ch. Div. 1965). The gravamen of plaintiffs' suit and that of the cross-claimant, Local 478, is to specifically enforce a provision in a collective bargaining agreement as interpreted by the arbitrator's award. As already stated, they in effect seek confirmation of that award.
Local 773 was not a party to that collective bargaining agreement nor was it a party to the arbitration proceeding. It is, of course, interested in the outcome of this litigation. However, as already noted, the arbitrator expressly refrained from considering the possible jurisdictional dispute between Local 478 and Local 773 that did in fact follow his award. Consequently, his award did not purport to be a final adjudication of Local 773's conflicting claim. In this view, Local 773 is not an indispensable party in this proceeding.
It was further asserted that N.J.S.A. 2A:24-7 provides that a party to an arbitration award may within three months after the award is delivered to him commence a summary *273 action for the confirmation of the award. In the instant case the arbitrator's award was rendered on July 7, 1967, but the complaint was not filed until February 19, 1968. Hence, it was urged that this proceeding is untimely and is barred by the cited statute.
A state's statute of limitations may, in proper circumstances, govern the timeliness of federal causes of action. In International Union, United Auto, Aerospace and Agr. Implement Workers of America (UAW) AFL-CIO v. Hoosier Cardinal Corporation, 383 U.S. 696, 704, 705, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), the court stated that "since no federal provision governs, we hold that the timeliness of a § 301 suit, such as the present one, is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations." However, as already noted, following the rendition of the arbitration award on July 7, 1967, M & M adhered to that award and assigned the work to members of Local 478. It was not until International rendered its jurisdictional award on January 26, 1968 that M & M reversed its position and reassigned the work to Local 773. A party may be estopped from pleading the statute of limitations if by his conduct it would be inequitable to permit him to do so. Bowler v. Fidelity & Casualty Co. of New York, 99 N.J. Super. 184 (App. Div. 1968). Clearly, Local 478 was lulled into the view that confirmation would not be required. Assuming, arguendo, the applicability of the three-month period prescribed by N.J.S.A. 2A:24-7, M & M is estopped from invoking that time limitation.
There is no merit to plaintiffs' argument that article XII, section 12 of the International constitution does not apply to disputes over work assignment but only to controversies concerning representation  that is, which union should represent the employees doing particular work. In support of their contention plaintiffs relied upon article XII, section 12 of the International constitution, which, among other things, provides that "Every member of a Local *274 Union, as a condition of becoming and remaining a member, acknowledges the right of the General Executive Board, in resolving a jurisdictional dispute, to transfer him from one Local Union to another." This sentence in the article is, however, preceded by the broad provision that where two or more local unions are in dispute concerning jurisdiction, the controversy shall be submitted to International for determination. The evidence indicates that work assignment issues have in the past been the subject of several jurisdictional disputes heard by International, and that at least in one instance Local 478 initiated such a jurisdictional claim. I am satisfied that article XII, section 12 of the International constitution applies to work assignment as well as representation disputes.
Local 478 contended that the dispute is not over whether the work involved should be performed by Local 478 employees or whether Local 478 or Local 773 had "jurisdiction" over the work. It stressed that the dispute concerned the obligation of M & M on its contract with Local 478 and as such M & M is required to allocate its work through the Newark Terminal pursuant to the arbitration award. The fact that Local 478 employees would be assigned the work is an incidental and resulting effect of the arbitrator's award. Hence, no jurisdictional issue is involved. This is not so. Although the arbitrator determined that the employer shall assign the work to its employees who are covered by the Local 478-M & M agreement, he clearly indicated that he was limited to an interpretation of that contract. He did not have before him the Local 773-M & M contract which also contained a work allocation clause, and therefore he expressly refrained from passing upon the potential jurisdictional dispute that actually ensued between Locals 478 and 773. It is in light of the subsequent jurisdictional dispute and award that this case is to be resolved.
As this is a suit under section 301 of the Labor-Management Relations Act, this court has concurrent jurisdiction *275 with the federal District Court. Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962). In these cases the state courts must apply federal substantive law, which is to be fashioned from the policies of our national labor laws. Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); Local 174 Teamsters, etc., of America v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). However, state principles of law compatible with federal labor law may be employed in order to find the rule that will best effectuate the federal policy. Textile Workers Union of America v. Lincoln Mills of Alabama, supra.
The Labor-Management Relations Act (29 U.S.C.A. § 141 et seq.) encourages the voluntary adjustment of labor disputes by methods agreed upon by the parties. Its purpose, in part, is "to provide additional facilities for the mediation of labor disputes affecting commerce." Section 201 of that act promulgates our national labor policy favoring the settlement of industrial grievances through the processes of "conference and collective bargaining or by such methods as may be provided for in any applicable agreement for the settlement of disputes." It states that, when necessary, governmental facilities for conciliation, mediation and voluntary arbitration will be made available to aid the parties. Section 203(d) provides:
"Final adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement. * * *"
This overriding policy is also found in the National Labor Relations Act, 61 Stat. 136, 73 Stat. 519, 29 U.S.C. § 151 et seq. in sections 8(b) (4) (D) and 10(k) which are concerned with the resolution of jurisdictional disputes by the National Labor Relations Board.
*276 "The legislative history of the Act shows that in enacting sections 8(b) (4) (D) and 10(k), Congress had three broad objectives in view. These were (1) to encourage settlement of jurisdictional differences without Governmental intervention; (2) to empower this Board to determine disputes not resolved by private arbitration, and thus avoid complaint proceedings; and (3) to outlaw jurisdictional strikes in the interest of neutral employers and the public." Local 173, Latherers' International Union (Newark and Essex Plastering Co.), 121 NLRB 1094, 1108 (1958).
Significantly, the National Labor Relations Act does not purport to cover all phases and stages of a work assignment controversy.
"While § 8(b) (4) (D) makes it an unfair labor practice for a union to strike to get an employer to assign work to a particular group of employees rather than to another, the Act does not deal with the controversy anterior to a strike nor provide any machinery for resolving such a dispute absent a strike. The Act and its remedies for jurisdictional controversies of that nature come into play only by a strike or threat of a strike. Such conduct gives the Board authority under section 10(k) to resolve the dispute." Carey v. Westinghouse Electric Corp., 375 U.S. 261, 263, 264, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964).
However, in the instant case, there is no violation of section 8(b) (4) (D), and therefore the National Labor Relations Board is without jurisdiction to hear the jurisdictional dispute at this time.
In seeking to resolve this dispute, this court must balance two important and necessary national labor policies concerned with the just and final resolution of industrial grievances by means voluntarily selected by the parties. On the one hand there is the noted preference for final and binding arbitration. As promulgated by the United States Supreme Court in the Steelworker's Trilogy (United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), and United Steelworkers *277 of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)), arbitration is the keystone of our national labor policy. This means of voluntarily adjusting work disputes without resort either to self-help or to court proceedings has been inserted in many labor-management contracts as the quid pro quo for a no-strike provision. Unless the arbitration award is given full play, the arbitration procedure will be rendered meaningless.
Counterbalancing the aforementioned national labor policy favoring the enforcement of an arbitrator's award, is the equally important national labor policy which encourages the establishment of internal union machinery for the voluntary adjustment of intra-union differences. By International keeping its own house in order, many disputes can be rapidly and finally resolved before they affect industry and the public. Thus, where action is taken by an international union pursuant to its voluntary adjustment procedure, this court should respect its findings where, as here, the resolution is fair, binding and complete. Courts of this State will not review the merits of an international union's interpretation and application of its constitutional provisions, or the decision rendered pursuant thereto, solely because the court may be inclined to decide otherwise. Barnhart v. United Automobile, etc., Local 669, 12 N.J. Super. 147 (App. Div. 1951).
Both Local 478 and Local 773 argued their respective causes before International. The opinion and award of the arbitrator was submitted in evidence, and the employer, M & M, stated that it would acquiesce in International's determination. It is of no moment that M & M was neither a party to the International constitution nor was it a party to the jurisdictional dispute. M & M does not contest the jurisdictional award. It is challenged only by plaintiffs and Local 478, who are plainly bound by the determination of the general executive board.
*278 As important as arbitration is to the settlement of industrial grievances, unless it is a final resolution of the entire controversy and binding upon all the parties in the dispute, it merely serves to fragment rather than to resolve the dispute. Arbitration involving the employer and only one of two local unions in a jurisdictional dispute over a work assignment may resolve the dispute when the award is in favor of the employer who contends that the local union is not entitled to the work involved. Such an award disposes of the contractual claim of the union for the disputed work assignment. In light of the possibility that the jurisdictional claim could be terminated in arbitration involving only one of the disputant local unions, the court in Carey v. Westinghouse, supra, 375 U.S., at pp. 265, 266, 84 S.Ct., at pp. 405, 406 ordered the employer to arbitrate but emphasized in doing so that "unless the other union intervenes an adjudication of the arbiter might not put an end to the dispute." It further noted that arbitration is just "one method of settling disputes over work assignments." As a matter of fact, the arbitration did not end the dispute. The other union did not intervene and the matter subsequently came before the National Labor Relations Board. Westinghouse Elec. Corp., 162 NLRB 81, 64 LRRM 1082 (1967). The Board, although giving consideration to the arbitrator's award, did not consider it binding upon the union which was not a party to the arbitration proceeding, and rejected the award. See also New Orleans Typographical Union, 56 LRRM 1169 (1964); New York Mailers Union No. Six (New York Times Co.), 68 LRRM 1180 (1968) Just as the National Labor Relations Board is not bound by a prior arbitration award interpreting the contract of only one union with an employer also having a contract with another union, neither is such an award binding upon International, the agreed-upon forum for the resolution of jurisdictional disputes, nor upon this court.
In the present case the arbitrator's award in favor of Local 478 did not purport to adjudicate the subsequent *279 jurisdictional dispute that actually ensued between Local 478 and Local 773. Although section 301(a) of the Labor-Management Relations Act empowers the courts to grant specific performance of awards resulting from the arbitration of union-employer disputes under arbitration procedures established by a collective bargaining agreement between the parties, General Drivers Union, etc., Local Union No. 89, v. Riss and Company, Inc., 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963), no useful purpose would be served now by confirming and enforcing this award. The two local unions contractually agreed to a resolution of their jurisdictional dispute by the general executive board of International. Local Union No. 14 of United Ass'n of Journeymen and Apprentices of Plumbing and Pipefitting Industry of United States and Canada v. United Ass'n of Journeymen, etc., 61 N.J. Super 228, 241 (App. Div. 1960). Its jurisdictional award, although inconsistent with the earlier arbitration award, is the controlling award that will terminate the litigation. No affirmative relief is sought by International or M & M, and none is necessary because the employer has reassigned the disputed work to Local 773 consonant with the jurisdictional award. Accordingly, the relief sought in the complaint and cross-claim of Local 478 will be denied.