188 N.J. Super. 251 (1982)
457 A.2d 63
WILLIAM F. JAMES, PLAINTIFF, AND DAVID POLNIAK, PLAINTIFF-INTERVENOR,
v.
CAMDEN COUNTY COUNCIL NUMBER 10 OF THE NEW JERSEY CIVIL SERVICE ASSOCIATION AND MILDRED DIFANTE, PRESIDENT, INDIVIDUALLY, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Camden County.
Decided November 8, 1982.
*253 Paul Rosenberg for plaintiff (Rappaport & Rosenberg, attorneys).
Steven Kudatsky for plaintiff-intervenor (Tomar, Parks, Seliger, Simonoff & Adourian, attorneys).
Joseph Carmen for defendants (Carmen & Mills, attorneys).
DEIGHAN, J.S.C.
This matter comes before the court basically to determine the validity of Art. VII, § 2B, of the constitution of defendant Camden County Council Number 10 of the New Jersey Civil Service Association, which is a public employee labor association *254 representing civil servants of Camden County. Art. VII, § 2B, of the Council's constitution requires that all those seeking nomination or election to office "must have attended at least all general membership meetings of the Council [reported by the sergeant-at-arms]," in the prior election year.
Plaintiffs originally sought to have their names included on the ballot, to enjoin defendant from interfering with their right to be on the ballot and to postpone the meeting for elections. The intervening plaintiff, David Polniak, amended his complaint to declare that Art. VII, § 2B, unreasonable and therefore invalid and unenforceable.
Plaintiff William F. James' nomination for president was rejected by the nomination committee because he attended only three out of the five general membership meetings during the election year which runs from October to September. Plaintiff Polniak's nomination for vice-president was rejected for the same reason, but additionally it was impossible for Polniak to comply with the eligibility requirements for the September 1982 election. He was not initiated into Council 10 until after the October 1981 general membership meeting and there were only four general membership meetings remaining in the election year.
On the return day of the order to show cause the parties entered into the following stipulation:
1. There are between 2,200 and 2,300 members of Council 10;
2. Pursuant to Art. VII, § 2B, attendance at five out of five general membership meetings occurring from October 1, 1981 to September 1982 is required for eligibility for election to office;
3. Membership attendance at the last five meetings of Council 10 was: October 1981, 34 present; November 1981, 29 present; February 1982, 50 present; March 1982, 56 present; September 1982, 45 present;
4. Under Art. VII, § 2B, of the Constitution only 15 members are eligible to run for office;
5. There are no excused absences from attending union meetings except for union business;
6. All members of Council 10, including plaintiffs, would be eligible for candidates to elective office;

*255 7. Plaintiffs exhausted all internal remedies;
8. Under the eligibility requirements of attendance at meetings the incumbant Vice-President, Secretary-Treasurer, Recording-Secretary and four out of 21 members of the Board of Trustees are ineligible to run for office;
9. At the October 1980 meeting the proposed amendment to Art. VII, § 2B, was adopted by the membership requiring an attendance at "5 out of 5" meetings. An alternative proposal requiring attendance at only three out of five meetings was rejected;
10. Minutes of that meeting refer to the adopted amendment "changing required attendance to 5 of 5 meetings was posted."
Plaintiffs contend that the eligibility restriction is unreasonable and invalid as a matter of law and also as applied to persons who have been Council 10 members less than one year. They assert that the disqualification creates an onerous requirement that a candidate must decide to run for office one year before nomination. Defendant maintains that courts may not interfere with the internal affairs of a voluntary association. They also point out the eligibility requirement of Art. VII, § 2B, of the constitution may be easily amended by a membership vote.
Plaintiffs refer to federal cases under the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C.A. § 481(e)[1], as a guide for the determination of the unreasonableness of the requirement to attend five out of five meetings a year for eligibility as a candidate for elective office. Defendant counters that the LMRDA is not applicable to governmental employees. Both parties rely on federal cases in support of their respective contentions.
While admitting it is not binding, plaintiffs suggest that this court may look to the federal standard for election eligibility requirements for private sector labor unions as a guideline for reasonableness under the LMRDA. They cite Local 3489, United *256 Steelworkers, etc. v. Usery, 429 U.S. 305, 97 S.Ct. 611, 50 L.Ed.2d 502 (1977), where the United States Supreme Court held that attendance requirements as a prerequisite for eligibility as a candidate for elective office of a union are unreasonable when (1) the significant anti-democratic effect of an attendance rule disqualifies a majority (96.5%) of the union membership and (2) a candidate is required to decide to run for office months in advance (18 months). Id. at 307, 308, 97 S.Ct. at 614, 50 L.Ed. at 507. See also, Annotation, "Reasonableness of Qualifications for Union Office Under § 401(e) of Labor Management Reporting Disclosure Act (29 U.S.C.A. § 481(a))." 24 A.L.R.Fed. 651, 661 (1975).
The federal courts have consistently followed Usery. In Marshall v. I.L.A. Local 1402, 617 F.2d 96 (5 Cir.1980), a requirement for attendance at one semi-monthly meeting in each of the 12 months prior to nomination was held unreasonable where it disqualified 93.7% of the union membership and required a formulation of the intention to run ten months in advance; in Usery v. Transit Union Local Div. 1205, 545 F.2d 1300 (1 Cir.1976), eligibility requirements which disqualified 94% and required intention to run 18 months in advance, was invalidated; in Marshal v. Carpenters Local 1914, 107 L.R.R.M. 2938 (D.Ariz. 1981), disqualification of 88% of membership was invalidated; in Marshall v. Postal Workers, 105 L.R.R.M. 2419 (S.D.N.Y. 1980), where 99% of membership were disqualified and members were required to decide 20 months in advance, was held unreasonable. Here, plaintiffs conclude that the defendant's rationale for the attendance requirement, i.e., to promise attendance and to assure more qualified candidates, is self-defeating and is outweighed by the preclusionary affects of the requirement.
Defendant argues that plaintiffs, like all members of Council 10, are bound by the constitution and such parity does not offend any fundamental standards of society. Cameron v. International Alliance of Theatrical Stage Employees, 119 N.J. Eq. 577 (E. & A. 1936), cert. den. 298 U.S. 659, 56 S.Ct. 681, 80 L.Ed. 1385 (1936). It maintains that to grant plaintiffs' application to *257 have their names on the ballot would, in effect, amend the constitution, which may be accomplished by the procedures set forth in the union's constitution. Barnhart v. United Auto Workers, 12 N.J.Super. 147 (App.Div. 1951). It points to federal cases favoring the union's own interpretation of its by-laws and constitution, Truck Drivers, Chauffeurs and Helpers Union Local 42 v. International Brotherhood of Teamsters, etc., 482 F. Supp. 266 (D.C.Mass. 1979), which should be accepted by courts as a reasonable and lawful interpretation by the union's authorized officials. Millinery Workers Local 55/56 v. United Hatters, 495 F. Supp. 60 (D.C.Mo. 1980). It proposes that voluntary associations have the right to adopt reasonable rules and regulations, Naylor v. Harkins, 27 N.J. Super. 594 (Ch.Div. 1953) and a court may set aside a union's interpretation of its constitution only if it is arbitrary and unreasonable. Labor Management Relations Act, 29 U.S.C.A. § 141 et seq., § 185(a); Local No. 1 (ACA), Broadcast Emp. v. I.B.T.C., W. & H., 419 F. Supp. 263 (E.D.Pa. 1976).
Also, New Jersey courts are loath to interfere with the internal management of an unincorporated, voluntary association. The right of a voluntary association to interpret and administer its own rules and regulations is as sacred as the right to make them, and there is no presumption against just and correct action or conduct on the part of its supervising or appellate authorities and tribunals. Barnhart v. United Automobile, etc., Local 669, 12 N.J. Super. 147, 152 (App.Div. 1951). Nor will they review the merits of an international union's interpretation and application of its constitutional provisions, or the decision pursuant thereto, solely because the court may be inclined to decide otherwise. Jennings v. M & M Transport Co., 104 N.J. Super. 265, 277 (Ch.Div. 1969).
However, judicial intervention may be had into the internal affairs of an association to avert an unreasonable, unconscionable and excessive action, such as would offend against natural justice, Joseph v. Passaic Hosp. Ass'n, 26 N.J. *258 557, 569 (1958), and where the consideration of policy and justice are sufficiently compelling, judicial scrutiny and relief are not found wanting. Falcone v. Middlesex Cty. Med. Soc., 34 N.J. 582, 590 (1961). Judicial intervention into the affairs of an association may be justifiable where the complaining parties have suffered an invasion of their civil rights, of person or of property, Leeds v. Harrison, 9 N.J. 202, 215 (1952), or when an individual member is harmed by a rule which violates public policy. Calabrese v. Policemen's Benev. Ass'n, Local 76, 157 N.J. Super. 139, 147 (Law Div. 1978).
It is clear that the election eligibility rule of Council 10 is unreasonable in the light of the specific renunciation of identical eligibility requirements by the United States Supreme Court and many other federal courts. See Steelworkers v. Usery, supra and federal cases cited supra; see, also, Annotation, supra, 24 A.L.R.Fed. at 661.
Defendant asserts that the LMRDA exempts associations of public employees and therefore the federal interpretation of reasonableness under that act does not apply. Further, it argues that New Jersey has provided standards for review of internal union elections in the Employer-Employee Relations Act (EERA), 34 N.J.S.A. 13A-1 et seq., which is applicable to both public and private unions.
Defendant is correct in that public labor organizations are explicitly excluded from many federal statutes regulating labor-management relations, 29 CFR § 452.12; however, Executive Order No. 11491, which controls labor-managements relations in the federal service, provides for "the maintenance of democratic procedures and practices, including provisions for periodic elections to be conducted subject to recognized safeguards and provisions defining and securing the right of individual members to participation in the affairs of the organization." Id. § 18, 5 U.S.C.A. § 7101 at 11. To implement this the assistant secretary was directed to prescribe regulations which conform generally to the principles applied to labor unions in the private *259 sector. Id. at 12. Thus, by an Executive Order the LMRDA has been made applicable to public employee associations insofar as internal practices and procedures and the protection of the democratic process for participation in the affairs of the organization are concerned.
EERA is applicable to both public and private unions. Nevertheless, there is no provision for the issue herein involved concerning eligibility as a candidate for elective office. The fact that this was not mentioned in EERA is not persuasive that the Legislature condones unreasonable requirements nor that the courts may not enlist guidance from federal decisions. While there are basic reasons for distinctions between private and public labor organizations,[2] there is no rational basis why the reasonable standard of the federal labor relations policy concerning internal management should not be applied as part of New Jersey labor relations policy. It remains to be determined whether this conclusion is sanctioned by New Jersey law.
State courts may properly turn to federal decisions for guidance in resolving questions in the field of labor relations. Cemetery Workers v. Roman Catholic Diocese of Newark, 127 N.J. Super. 277, 280 (App.Div. 1974). In Standard Motor Freight, Inc. v. Local Union 560, 49 N.J. 83 (1967), our Supreme Court, in quoting from Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972, 980 (1957), noted that courts should fashion substantive federal labor law from the policy of our national labor laws. 49 N.J. at 88. In the field of public employee labor relations, New Jersey courts have relied upon federal statutes (National Labor Relations Act, §§ 7, 9(a), 29 U.S.C.A. §§ 157, 159(a)), and decisional law for assistance and guidance in their interpretation of grievances of public employees and negotiating collective agreements *260 under the EERA. Galloway Tp. Bd. of Ed. v. Galloway Tp. Ass'n of Ed. Sec., 78 N.J. 1 (1978). See, also, Galloway Tp. Bd. of Ed. v. Galloway Tp. Ed. Ass'n, 78 N.J. 25, 40-46, 48-51; Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed., 78 N.J. 144, 159, n. 2 (1978); Lullo v. International Ass'n of Fire Fighters, 55 N.J. 409, 424-426 (1970). "`Experience and adjudications' under the federal act may appropriately guide the interpretations of provisions of the New Jersey statutory scheme." Galloway Tp. Bd. of Ed. v. Galloway Tp. Ass'n of Ed. Sec., supra, 78 N.J. at 9.
Based upon the foregoing it is determined that this court by analogy may turn to the federal cases under the Labor-Management Reporting and Disclosure Act, 29 U.S.C.A. § 481(e), as a guide to determine the unreasonableness of the requirements for eligibility as a candidate to an elective office in an association of public employees.
In view of the foregoing it is concluded that:
(1) Union organization rules regarding election eligibility must be reasonable because of a strong public policy requiring that union officials be elected according to democratic procedures.
(2) The Supreme Court of the United States has determined union election eligibility rules identical to the one at bar to be unreasonable because of their anti-democratic effect.
(3) The New Jersey Supreme Court seeks guidance from and applies federal statutes and decisions in the areas of labor relations.
(4) Where rules of voluntary associations contravene public policy the courts may intervene to protect civil, property and personal rights of members.
(5) Where only 15 out of 2,200 members were eligible to be elected to office at the Council 10 election in September 1982, which figure represents .6% of Council 10's membership while 99.4% of the members are ineligible for election, the requirements for eligibility for election to office are unreasonable.
(6) This court determines that Article VII, § 2B which requires that those seeking nomination of election to office "must attend at least all general membership meetings of the Council in the prior election year" is as unreasonable as a matter of law and therefore invalid.
An order may be presented by plaintiffs consistent with the determination herein made. No costs.
NOTES
[1] In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and hold office (subject to [certain exceptions] and to reasonable qualifications uniformly imposed).
[2] E.g., Public employees may not strike. Union Beach Bd. of Ed. v. N.J.E.A., 53 N.J. 29, 32, 46-48 (1968); Delaware River Bay Auth. v. International, etc., Masters, Mates and Pilots, 45 N.J. 138, 144-149 (1965).