SAMUEL CALABRESE, DOMINICK OLIVO, JAMES HIETALA, JOSEPH FUSCO, ANDREW CALABRESE, RICHARD BROMBERG, AND EDWARD KISCH, SR., PLAINTIFFS-APPELLANTS, v. POLICEMEN'S BENEVOLENT ASSOCIATION, LOCAL NO. 76, INC., OF THE TOWNSHIP OF SPRINGFIELD, NEW JERSEY, A BRANCH OF THE NEW JERSEY POLICEMEN'S BENEVOLENT ASSOCIATION, INC., AND THE OFFICERS AND DIRECTORS THEREOF, AND THE NEW JERSEY STATE POLICEMEN'S BENEVOLENT ASSOCIATION, INC., DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided February 21, 1978.

140

*Mr. Joseph S. Seidel* for plaintiffs-appellants (*Mr. Joseph S. Seidel* on the brief).

*Mr. Lawrence A. Whipple, Jr.* for defendants .(*Messrs. Zazzali* and *Zazzali,* attorneys; *Mr. Lawrence A. Whipple, Jr.* on the brief).

FELLER, J. S. C. (retired, temporarily assigned on recall). Plaintiffs Samuel Calabrese, Dominick Olivo, James Hietala, Joseph Fusco, Andrew Calabrese, Richard Bromberg and Edward Kisch, Sr., are employed as police officers by Springfield Township, Union County, New Jersey. For a varying number of years plaintiffs have been members of defendant, New Jersey State Policemen's Association, Local No. 76, of Springfield Township, New Jersey (hereinafter "Springfield P.B.A."). On or about August 1, 1975 plaintiffs joined an organization known as the Fraternal Order of Police (hereinafter "F.O.P."). On August 18, 1975 the membership of the Springfield P.B.A. voted unanimously to expel plaintiffs from their organization for alleged violations of Art. VI, § 1 of their by-laws. This expulsion was upon the determination that the F.O.P. is an organization "the purpose of such organization being to represent policemen in matters affecting their economic welfare."

On August 25, 1975 the Springfield P.B.A. president, Vernon Pedersen, notified plaintiffs that their membership in the Springfield P.B.A. had been terminated. On September 9, 1975 an order was entered by the Superior Court, Law Division, Union County, restraining the Springfield P.B.A. from expelling plaintiffs and directing the organization to show cause on October 3, 1975 why the restraints imposed thereon should not be made permanent.

On October 6, 1975 an answer to the complaint and motions to vacate the temporary restraining order and for

dismissal of the complaint were filed by the Springfield P.B.A. and docketed in the Office of the Superior Court Clerk. The matter was adjourned so that possibilities of settlement could be explored by the parties.

On October 20, 1975 the Order expelling plaintiffs from the Springfield P.B.A. was suspended by President Vernon Pedersen with the consent and approval of the members of his executive board. Each plaintiff was notified by President Pedersen that charges had been preferred against him for violation of Art. VI, § 1 of the Springfield P.B.A. by-laws and that a hearing was to be conducted at Town Hall, Springfield, New Jersey.

Administrative hearings were conducted on November 3, 1975, January 26, 1976 and February 24, 1976. In compliance with the November 5 order of the court, plaintiffs were afforded the opportunity to be represented by counsel and a stenographic transcript of the proceedings were maintained. Pursuant to this order, filed January 24, 1977, the Law Division retained jurisdiction pending completion of the above-mentioned hearings.

Briefs were submitted by both plaintiffs and defendants to the Judiciary Committee of the State P.B.A. and a unanimous decision was reached by the latter body on June 29, 1977, upholding the said expulsions. Pursuant to the constitution and by-laws of the State Policemen's Benevolent Association, this decision was submitted to the State Board of Delegates for its consideration and final determination. On July 12, 1977 it ratified and confirmed the determination.

Plaintiffs contend that they have violated no rule or by-law of the P.B.A. which would justify their expulsions.

The by-law provision which plaintiffs have been found guilty of violating is Art. VI, § 1 of the by-laws of the Springfield P.B.A. Local. This provision reads as follows:

Any member of this local who shall join or become a member of any organization in or outside of the police department of which he is a member, *the purpose of each [sic] organization being to repre-*

*sent policemen in matters affecting their economic welfare, shall thereby automatically forfeit his membership in this Local and to all rights and benefits thereof.* This section shall be inapplicable to the N. J. Chiefs Association, and the Inter-National Conference of Police Associations, Inc. [Emphasis supplied]

The State P.B.A. by-laws Art. VIII, § 1, is substantially the same. It reads as follows:

Any individual member of any local associations who shall join or become a member of any other police or law enforcement organization in or outside of the police department or law enforcement agency of which he is a member, *the purpose of such organization being to represent policemen or law enforcement officers in matters affecting their economic welfare, shall automatically lose his membership in this Association and the Local Association, including all rights and benefits thereunder.* This section shall be inapplicable to the N. J. Chiefs Association and the International Conference of Police Associations, Inc. In determining whether membership in any other police or law enforcement organization is violative of this section, any member may inquire of the President of this Association and any determination by this Association relating to any other organization shall be deemed final and binding therein. [Emphasis supplied]

The parties agree that there are no genuine issues of material facts involved. Thus, this court heard oral arguments on the plaintiffs' motion and defendants' cross-motion for summary judgment. Briefs were submitted and decision reserved.

## I

Plaintiffs argued that the P.B.A.'s by-law provisions, for the violation of which they have been expelled from membership, violate constitutional standards of "equal protection" and statutory prohibitions against discrimination. Defendants contend, however, that the constitutional mandate of "equal protection under the law" is not applicable to a private association acting solely in an intrastate capacity. F.O.P. seeks to invoke the 14th Amendment protection by predicating "state action" upon an assumption by defendants'

organization of certain functions which would otherwise allegedly be borne by the State. Counsel argued that the State would be forced to provide certain welfare benefits and insurance policies if the P.B.A. were not performing these functions.

This court agrees with the contention of defendants that the local and state P.B.A. are private associations acting solely in a private capacity. See *Moose Lodge v. Irvis,* 407 *U. S.* 163, 92 *S. Ct.* 1965, 32 *L. Ed. 2d* 627 (1972); *Lloyd Corp. v. Tanner,* 407 *U. S.* 551, 92 *S. Ct.* 2219, 33 *L. Ed.* 2d 131 (1972). However, this court disagrees with defendants that it has no jurisdiction to hear this matter.

This is not a situation where a prerogative writ action has been instituted to decide the internal affairs of a private corporation rather than a public corporation. Rather in this case the writ of *mandamus* is used as an attempt to restore to membership those who have allegedly been expelled from a voluntary private organization. *Trautwein v. Harbourt,* 40 *N. J. Super.* 247 (App. Div. 1956).

In *Joseph v. Passaic Hospital Ass'n.,* 26 *N. J.* 557, 571 (1958), the court held that an irregular removal from connection with a private corporation will warrant the use of the writ of *mandamus* to effect a restoration of the expelled member to his corporate rights. The court further held that in the modern view *mandamus* is not treated as a prerogative writ except where invoked in matters of direct concern to the public, but rather as an ordinary writ of right to remedy the inaction. In New Jersey it is an extraordinary remedial process to compel the performance of a specific act or duty.

Furthermore, when a properly qualified physician was improperly excluded from membership in a society for which he was qualified, *mandamus* was held to be the proper remedy. *Falcone v. Middlesex Cty. Medical Society,* 34 *N. J.* 582 (1961).

However, this relief has repeatedly been contingent upon the fact the party has exhausted his administrative remedies.

*Sienna v. Grand Lodge, etc., Order Sons of Italy*, 11 *N. J. Super.* 507 (App. Div. 1951).

It is evident that in this case plaintiffs have exhausted their administrative remedies in the local and state P.B.A. Therefore, under the circumstances this court has jurisdiction to hear the matter.

## II

The issue involved in this litigation is whether or not plaintiffs, as members of the F.O.P., belong to a police or law enforcement agency the purpose of which is to represent policemen or law enforcement officers in matters affecting their economic welfare. Defendants contend that plaintiffs are so involved, and thus they automatically lose their membership in the P.B.A. in accordance with the by-laws set out above.

Plaintiffs deny this and further contend that Art. 1, § 5 of the constitution and by-laws of F.O.P. states that said organization is strictly nonpolitical, nonsectarian and shall have no affiliation directly or indirectly with any labor unions, congress, federation or committees of like nature, or political action committees or similar organizations by whatever name known.

Plaintiffs further contend that in three municipalities in the State the F.O.P. has assumed the role of bargaining agent for the municipal officers, but that this does not make the F.O.P. an organization formed for the purpose of representing policemen in matters affecting their economic welfare.

Defendants contend that the members of the F.O.P. have every right to exert whatever influence they can to obtain economic benefits for the members and to exert whatever efforts they can to bargain for police officers. However, if such actions conflict with the by-laws of the P.B.A., that organization has the right to expel such members.

Private organizations must have considerable latitude in rule-making in order to accomplish their objectives,

and their private rules are generally binding on those who wish to remain members. *Higgins v. Amer. Society of Clinical Pathologists,* 51 *N. J.* 191 (1968) aff'd after remand 53 *N. J.* 547 (1968) ; *Falcone, supra* 34 *N. J.* at 590. Only when an expulsion from a private association is based on rules which violate public policy should the courts interfere. *Higgins, supra* 51 *N. J.* at 202.

In *Falcone* the court emphasized that the judiciary has been reluctant to interfere with the internal affairs of private organizations, and this reluctance has generally promoted the health of society. The court further held that judicial review of an association's by-laws is necessary only when the effect has a negative impact on the public welfare and an individual's opportunity for economic success.

The constitution and by-laws of a voluntary association become part of the contract entered into by a member when he joined such association. By the same logic, any duly adopted additions or amendments to such constitution and by-laws during the continuance of such membership is equally binding on the member. *Schwankert v. N. J. State Patrolmen's, etc., Inc.,* 77 *N. J. Super.* 224, 230 (Law Div. 1962) ; *Leeds v. Harrison,* 7 *N. J. Super.* 558, 570 (Ch. Div. 1960) ; *Ace Bus Trans. Co. v. South Hudson, etc. Ass'n,* 118 *N. J. Eq.* 31 (Ch. 1935).

Furthermore, in *Schwankert, supra* at 229, the court stated that there must be a determination as to the meaning of the by-law, including the very basic question of what is meant by the phrase: "the purpose of such organization being to represent policemen in matters affecting their economic welfore." The court further stated that even though plaintiffs admit membership in the Fraternal Order of Police, there still must be a definitive finding that this organization comes within the prohibition of this clause. The initial determination of these questions belongs with the organization and not with the court. However, there was no final determination made of the issues involved in *Schwankert, supra.*

In the present case the initial determination of these questions has been decided by the organization and a review of the determination now rests with this court.

## III

Vernon Pedersen, president of the Springfield P.B.A., said that his local has always been the bargaining agent for police officers in the township; that on February 8, 1972 the township committee passed a resolution recognizing the P.B.A. as the exclusive bargaining agent for patrolmen, sergeants and lieutenants, etc. He said that the P.B.A. has continued to operate as the collective bargaining agent for patrolmen, superior officers and sergeants, but not for the chief of police. He said that the F.O.P. established a Lodge in the township in 1975 and has locals in Jersey City, Camden, Newark, Irvington and possibly Maplewood. He further stated that he does not agree that the F.O.P. is only a fraternal organization. He said that it is the collective bargaining agent in Camden and that in Newark both the F.O.P. and P.B.A. signed statements to the effect that they were both striving to be bargaining agents for the City of Newark.

Officer Pedersen further stated that there are more than one organization or chapter of the F.O.P. within the State and that they are either applying to take over or have taken over, and that all of these locals are under a state charter; that if in fact some of these locals are trying to take over economic welfare, and some have already done so, it is obvious that one of the reasons for the F.O.P. is the economic welfare of the police officers so involved.

Officer Pedersen testified that two days after the township committee passed a resolution recognizing the P.B.A. as the local bargaining agent, Detective Calabrese petitioned the committee, requesting that police captains, superior officers and lieutenants be granted leave to negotiate for themselves. This petition was by letter. As a result the township com-

mittee amended its original resolution to allow superior officers to bargain for themselves. However, this amendment was voted down by the P.B.A.

Officer Pederson was asked the following questions and gave the following answers:

Q. And what do the by-laws provide concerning superior officers' right to form a separate bargaining unit?
A. Superior officers may have a separate bargaining unit, providing:
 a. Superior officers may not voluntarily establish their own bargaining unit;
 b. Superior officers may have a separate bargaining unit if required by P.E.R.C. provided:
 1. Superiors may not have their own treasury; superiors may not have their own negotiator paid for — superiors may have their own negotiators paid for by the Local and appointed by the Local Association President only.
 Both superiors and non-superior units must jointly vote on the final contract. Majority vote shall prevail.
Q. So it is your testimony that when Officer Calabrese attempted to form a superior officers' association, it was rejected by the local?
A. It was rejected by the local before this letter was ever typed up.
Q. And then he formed his F.O.P.?
A. At a later date yes, during the year of 1975 an F.O.P. was formed.

Roger Samartino, a police officer of North Wildwood, testified that the F.O.P. and not the P.B.A. represents the employees for bargaining purposes in North Wildwood for the past 15 years. He said that they have members coming into the P.B.A. from the F.O.P., but before they are accepted they must resign from the F.O.P. and send copies of the letter of resignation to the F.O.P. and P.B.A. He further stated that any member of the P.B.A. in the county who joined the F.O.P. resigns voluntarily from the P.B.A.

Robert Wilt, member of the Union Township police force for 15 years, is state delegate of the local P.B.A. He said that the P.B.A. is the sole bargaining agent; that there is a F.O.P. lodge in the township, but that he knows of no

dual membership in the P.B.A. and F.O.P. He said that when some of the members of the P.B.A. joined the F.O.P. they were told that they were ineligible to continue membership in the P.B.A. and were asked to resign, which they did.

Eugene Pedersen, a patrolman in Springfield for 15 years, is a member of the P.B.A. He testified that Lieutenant Calabrese told him that today the F.O.P. is just a fraternal organization, but that was not to say that in four or five years it could become the bargaining agent for the township in lieu of the P.B.A.

## IV

Harold Shea, a detective in the Jersey City Police Department and State President of the F.O.P. for four years, testified that the organization presently functions as bargaining agent in 40 out of the 50 states, and that it is the exclusive bargaining agent in Flint, Michigan and Miami, Florida. He also testified that it is the certified representative of law enforcement officers in Camden and Vineland, and the bargaining agent in the Hudson County Sheriff's Department. He said there are 76 lodges in New Jersey with approximately 5800 members. In addition, Lodge No. 12, F.O.P., has filed a petition to represent a 700-man unit comprised of all patrolmen employed by the Newark Police Department.

At the hearing before the local P.B.A., F.O.P. Lodge President Shea testified as follows:

Q. Do you recall making any statements to members of the P.B.A. that if anybody thought that the F.O.P. was not an economic organization, they were crazy?
A. It's getting to that point, I would say, yes.
Q. But you feel that —
A. But not in the State of New Jersey. I would say around the rest of the country, I would say, yes, there —
Q. That it is an economic organization?
A. I would have to say in other states, yes, because our by-laws strictly prohibit it.

Q. Your state by-laws?
A. The state by-laws, yes.
Q. Strictly prohibited?
A. There's nothing in our state by-laws that say we're organized for the economic welfare of the —
Q. But you've already testified, detective, that you have lodges which are engaging in activity which affects the economic welfare of its members, do you not?
A. I have to agree with you there, yes, if you consider —
Q. Well —
A. That's for the welfare of the policemen, yes.
Q. Well, your contract is nothing more than a memorialization of your terms and conditions of employment, is that right?
A. That's correct.
Q. Isn't it true that the thrust of your contract is to get better wages and better fringe benefits?
A. Positively.
Q. Wouldn't you say that's economic betterment, or —
A. I have to agree, yes.

When questioned as to the number of localities in which the F.O.P. has concentrated its bargaining efforts, Shea answered, "I mean there's very, very many." He said that the national F.O.P. has never challenged F.O.P. activities in other states for the economic benefit of the members. He further stated that in New Jersey local F.O.P. lodges have negotiated contracts and there is nothing in the by-laws to specifically prohibit this.

Furthermore, there was evidence of the F.O.P.'s efforts and activities regarding economic matters involving the nature and extent of the lobbying activities undertaken by the F.O.P. He said that they have a legislative committee which tries to influence the Legislature to pass any bill that is beneficial to police officers. Bills pending in the Legislature and supported by the F.O.P. relate to terms and conditions of employment.

He referred to residency and retirement bills; bills mandating overtime payment at double time, and a bill permitting retirement after 20 years of service. These bills were not "social" but "economic" in character and effect.

Additionally, the F.O.P. offers a variety of insurance plans at both state and local levels in which a member may subscribe. The programs range from accident, health and life insurance to death benefits, which are paid for by the members at reduced rates because of membership in the F.O.P.

Unquestionably, the F.O.P. has every right to exert whatever influence it can to obtain economic benefits for its members. So, too, the F.O.P. can and should exert whatever efforts it can to bargain for police officers. However, the P.B.A. also has the right to see that such efforts do not conflict with nor hamper its lobbying and bargaining efforts. Thus, the potential for conflict between the P.B.A. and the F.O.P. is very apparent.

At the hearing on February 24, 1976 Lt. Samuel Calabrese, President of the Springfield F.O.P., stated that at the present time the F.O.P. is just a fraternal order; that there is nothing in the constitution or by-laws of the F.O.P. which permits or advocates the economic betterment of its members. He said that he is dissatisfied with the results of the collective bargaining that the P.B.A. has achieved. He further testified that if the local F.O.P. decided to take over the bargaining rights of Springfield, he would resign from the P.B.A. because there would be a conflict.

Originally a meeting was held to discuss the possible formation of an F.O.P. chapter in Springfield. At that meeting the President of the state P.B.A. made it clear that membership in the F.O.P. would be contrary to the best interests of the P.B.A. and would militate against continued P.B.A. membership. Six out of the seven plaintiffs were present at this meeting, namely, Samuel Calabrese, Dominick Olivo, Joseph Fusco, Andrew Calabrese, Richard Bromberg and Edward Kisch. The president's warning was given due to the provisions of Art. VIII, § 1, of the state P.B.A. by-laws which state:

In determining whether membership in any other police or law enforcement organization is violative of this section, any member

may inquire of the President of this Association and any determination by this Association relating to any other organization shall be deemed final and binding.

■ A review of the evidence leads to the conclusion that the purpose of the F.O.P. through its members, the plaintiffs, is to represent policemen or law enforcement officers affecting their economic welfare, and as a result they automatically lose their membership in the P.B.A., including all rights and benefits therein (Art. VI, § 1, of the by-laws of Springfield P.B.A. Local and Art. VIII, § 1, of the by-laws of the state P.B.A.).

There is no evidence that the F.O.P. has directed the members of its Local and state Chapters to cease their activities in this particular area. This has amounted to acquiescence by the F.O.P. of the activities of its members in this particular area.

## V

■ Plaintiffs allege that the distinction made in the by-laws of the P.B.A. between membership in the New Jersey Chiefs Association and the International Conference of Police Associations, Inc., on one hand, and membership in the F.O.P. on the other hand, is unlawful. They further allege that in failing to enforce the subject by-laws against persons holding dual membership in organizations, such as the Columbians and Bronze Shields, while at the same time acting to expel plaintiffs, the P.B.A. has applied its by-laws in a discriminatory and unlawful manner.

However, no violation of the by-law has been shown. The two organizations execpted from operation of the P.B.A. by-laws, namely, the New Jersey Chief's Association and the International Conference of Police Associations, Inc., represent no threat to either the bargaining status or organizational position of the P.B.A.

Since the P.B.A. does not act for the police chiefs at the bargaining table, no conflict and no rivalry can arise:

Similarly, the Columbian and Bronze Shield organizations are organized strictly along ethnic lines and seek only to advance the interests of their members in terms of promotional opportunities, and thus no conflict arises with respect to the P.B.A.

 Although several cases are cited herein involving similar questions of law with reference to union activities, it should be noted that the P.B.A. is not a union. Policemen are public officers as opposed to employees of or holders of positions in the government. *Springfield Tp. v. Pedersen,* 73 *N. J.* 1, 5 (1977); *Trainor v. Newark,* 145 *N. J. Super.* 466, 473 (App. Div. 1976).

Forfeiture of membership clauses, both for acts against the organization and for acts which interfere with the organization's performance of its legal and contractual obligations, have been found to be reasonable. *Int'l Bro. of B.I.S. B. F. & H. v. Hardeman,* 401 *U. S.* 233, 91 *S. Ct.* 609, 28 *L. Ed.* 2d 132 (1971).

The advocacy of dual unionism and sponsorship or creation of a rival organization has been held to be activity clearly in violation of membership responsibilities and disrupture of contractual relations; otherwise the members could campaign against the union while remaining a member and, therefore, privy to the union's strategy and tactics. That such discipline might result in termination of pension or similar benefits has not been found to invalidate the union's action. *Sawyers v. Grand Lodge Int'l Ass'n of Machinists,* 279 *F. Supp.* 747 (E. D. Mo. 1967); *Price v. N.L.R.B.,* 373 *Fed.* 2d 443 (9 Cir. 1967); *Hanna v. Woodworkers,* 68 *L.R.R.M.* 2855, 58 *L.C.* ¶ 51, 953 (Miss. Ch. Ct. 1968); *Neuffer v. Bakery Confection Workers,* 193 *F. Supp.* 699 (D. C. 1961), aff'd 113 *U. S. App. D. C.* 334, 307 *F.* 2d 671 (D. C. Cir. 1962).

 The right of freedom of speech of union members is limited by union's power to enforce reasonable rules as to responsibility of members toward organizations as an in-

stitution and to prevent interference with union's contractual and legal obligations. *Sawyers, supra* 279 *F. Supp.* at 755, 756.

In *Zelenka v. B.P.O.E. of the U. S.*, 129 *N. J. Super.* 379, 385, 386 (App. Div. 1974), the court held that the parties were in agreement that the issue here was not whether defendants were justified in expelling plaintiff for urging a change in the order's membership criteria. It was agreed that that was not the basis for the action but rather plaintiff's expressing any opinion publicly on the matter at all, whether for or against the membership rule, without complying with the lodge regulation requiring approval of the expression by the Grand Exalted Ruler. Defendants urged that their policy against "public washing of private organizational linen" was a justified one and that plaintiff voluntarily sacrificed his right of unqualified freedom of speech to that extent when he joined the order.

The court in *Zelenka* further stated that the pertinent statute of the order does not preclude public expression by a member concerning a fraternal matter if one man — the Grand Exalted Ruler — approves and such approval is left to that official's absolute discretion. There is no right more fundamental to the liberties of the people and to the successful functioning of the democratic system than that of individual freedom of expression. However, that right is qualified in numerous respects by our public laws, and it is similarly qualified in respect to its exercise in the course of one's participation in the activities of private associations. The *Zelenka* court gave as an example that a member of a Republican Club could not expect to be allowed by the courts to campaign for a Democratic candidate and nevertheless be immune to expulsion from the club for same.

In the present case defendants do not object to plaintiffs exercising their constitutional right of freedom of expression and, unlike the decision in *Zelenka, supra,* the actions of defendants were not based on plaintiffs exercising such

right. The facts in the present case were based on the fact that plaintiffs joined the F.O.P., the members of which were involved in activities for the economic welfare of police officers, in competition with the P.B.A. and contrary to the constitution and by-laws of the P.B.A. The facts here are similar to the example given by the court in *Zelenka* concerning a member of a Republican Club who campaigned for a Democratic candidate.

See also, *North Jersey Newspaper Guild v. Rakos,* 110 *N. J. Super.* 77, 86 (App. Div. 1970), in which the court held that a union may fire or expel a member to enforce compliance with its constitution and rules.

A union must have the power to relieve itself of its discordant elements in order that harmony may prevail, and therefore, it has the right to provide by its constitution and by-laws for expulsion of members transgressing their reasonableness. *Barnhart v. United Auto., etc., Local* 669, 12 *N. J. Super.* 147, 153 (App. Div. 1951).

Furthermore, in the instant case no adverse effects are visited upon plaintiffs with reference to their employment. There is no evidence that membership in the P.B.A. is in any way necessary to either employment or advancement in police work. See *Schwankert, supra* 77 *N. J. Super.* at 230.

Therefore, for the reasons set out above:

1. The motion for summary judgment made on behalf of plaintiffs is hereby denied.

2. The motion for summary judgment made on behalf of defendants is hereby granted.