NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2101-13T3

```
APPROVED FOR PUBLICATION

   September 1, 2015

  APPELLATE DIVISION
```

IN THE MATTER OF PROBATION
ASSOCIATION OF NEW JERSEY AND
PETER TORTORETO AND ROBYN GHEE.

_____

Submitted March 10, 2015 — Decided September 1, 2015

Before Judges Fisher, Accurso and Manahan.

On appeal from the New Jersey Public
Employment Relations Commission, Docket
No. CI-2011-045.

Law Office of C. Gregory Stewart, attorneys
for appellants Peter Tortoreto and Robyn
Ghee (Clifford G. Stewart, on the brief).

Daniel J. Zirrith, attorney for respondent
Probation Association of New Jersey.

Don Horowitz, Acting General Counsel,
attorney for respondent New Jersey Public
Employment Relations Commission (Christine
Lucarelli, Deputy General Counsel, on the
brief).

The opinion of the court was delivered by

ACCURSO, J.A.D.

The sole issue on this appeal is whether the Public

Employment Relations Commission (PERC) was correct, as a matter

of law, in determining that even were all the allegations of the

unfair practice charge filed by appellants Peter Tortoreto and

Robyn Ghee true, they concern only internal union disputes that do not support even a potential violation of N.J.S.A. 34:13A-5.4b(1), and thus are beyond the scope of PERC's jurisdiction. Because our review convinces us that PERC has jurisdiction over this dispute, we reverse.

The essential facts are easily summarized. Appellants are probation officers employed by the judiciary and long-time members of its union, the Probation Association of New Jersey (PANJ). In the course of seeking statewide office in the union, appellants published a piece of campaign literature entitled "Secret Society of PANJ Finances" in which they alleged that while union members were forced to accept an eighteen-month wage freeze, the finance chairperson had given the union president "enormous raises hidden in the budget process."

The piece was quite specific about the amounts the president had received in salary, stipend and 401k contributions for the years from 2008 through 2010, and alleged the president "may retire with $250,000.00 of your dues in a 401(k) accumulated over years." The piece was also critical of legislative spending, the lack of scheduled finance committee meetings and the legal billing by the union's counsel. With regard to the legal billing, the piece alleged that the union paid its outside counsel over six million dollars, and that

"[m]ore than $400,000 per year was spent without detail by the senior partner. In the January and February 2010 legal billings, over $40,000 was spent for one lawyer and a single supervisor from one county."

Appellants lost the election. Their successful opponents thereafter requested that the union file disciplinary charges against them concerning their conduct during the election campaign. The union formed a disciplinary committee to hear charges that appellants violated the union's by-laws by making and disseminating false or misleading allegations against the union and its officers and making false statements accusing board members of dishonesty and of perpetuating mistrust of the executive board, among other things.

When appellants' request for discovery and an adjournment of the hearing was denied, they failed to appear. After hearing the witnesses and reviewing documents, the committee recommended that appellants be disciplined in absentia. Thereafter, the Board voted to sustain most of the charges. The union suspended Tortoreto and barred him from union-related activities for three years and fined him $1000. The union suspended Ghee and barred her from union activities for six months. It also relieved her of her position as vice president of her local union. Both were

allowed to apply to the union for reinstatement after their suspensions.

Appellants thereafter filed an unfair practice charge against the union with PERC alleging PANJ violated section 5.4b(1)[1] of the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 to -43 by bringing disciplinary charges against them resulting in their suspension from the union. PERC's Director of Unfair Practices "determined that the allegations in the charge, if true, may constitute unfair practices," and thus issued a complaint, limited to alleged violations of section 5.4b(1), and set the matter down for a hearing. See N.J.A.C. 19:14-2.1. The union answered and immediately moved for summary judgment and a stay of the proceedings pending resolution of its motion. The Hearing Examiner granted the motion to stay the proceedings over appellants' opposition and elected to hear the motion for summary judgment.

PANJ's motion was not directed to the merits of the complaint. Instead, PANJ argued PERC was without jurisdiction

_____

[1] This section prohibits employee organizations, their representatives or agents from "[i]nterfering with, restraining or coercing employees in the exercise of the rights guaranteed to them by this act." N.J.S.A. 34:13A-5.4b(1).

to adjudicate appellants' complaint "as it concerns solely an intra-union dispute involving the discipline of two discordant members who violated the Constitution and Bylaws of PANJ. The Charging Parties have not alleged any facts that would enable the Commission to exercise jurisdiction over their Complaint."

The Hearing Examiner agreed. She found "the undisputed facts show that Charging Parties were suspended as members in good standing for disseminating campaign literature and pamphlets, particularly for the information contained therein, during an internal union election." Noting the executive board convened a disciplinary committee after receiving complaints "by members who apparently believed the pamphlets contained damaging and false information," that the committee held a hearing and reviewed evidence before recommending the charging parties be disciplined, and that other members had been disciplined in the past, the Hearing Examiner concluded "[o]n its face this conduct is not arbitrary, discriminatory or invidious."

The Hearing Examiner rejected appellants' argument that their suspensions were arbitrary because the charges that they had published false and misleading information in the "Secret Society pamphlet" were themselves false. She determined that "[i]t is irrelevant to this case whether Charging Parties' pamphlets were the truth, partly true or untrue. That judgment

is for those authorized within PANJ (or a court) to decide and not for the Commission."

She likewise dismissed appellants' claims regarding the allegedly improper composition of the disciplinary committee and the alleged procedural irregularities in the disciplinary process as internal union matters. She further noted that even were appellants' accusations about "mismanagement and financial malfeasance . . . true, any remedies thereto, such as audits and the placement of 'holds' on accounts, are outside the Commission's jurisdiction."

Finally, the Hearing Examiner concluded:

> Charging Parties were suspended as members in good standing and Tortoreto was fined. Both were temporarily barred from participating in union-related activities, events and functions, including elections. Ultimately, Charging Parties were temporarily excluded — not expelled — from PANJ. As of the filing date of the [summary judgment] motion, Ghee's six-month suspension has been completed, and she has been reinstated and can participate in all activities and functions, including elections. Thus, Charging Parties have not provided facts giving rise to an examination of PANJ's internal membership matters through the Commission's unfair practice jurisdiction. See In the Matter of N.J. State PBA and PBA Local 199 (Rinaldo), P.E.R.C. No. 2011-83, 38 N.J.P.E.R. ¶ 8, 2011 N.J. PERC LEXIS 106 at 5-6 (2011).

The Hearing Examiner ultimately concluded that "even if all the allegations were proven true they would amount to internal union

A-2101-13T3

disputes. None of the alleged facts support even a potential violation of 5.4b(1) of the Act."

PERC affirmed the Hearing Examiner's dismissal of the complaint in a written decision. Relying on its decision in Rinaldo, the Commission found

> the Charging Parties' exceptions relate to allegations, that even if true, concern internal union matters over which the Commission does not have jurisdiction. Additionally, we find that there is no evidence that the conduct of PANJ was arbitrary, discriminatory or in bad faith or that the Charging Parties were expelled from PANJ as a result of the discipline imposed on them.

This appeal followed.

Although we ordinarily accord substantial deference to an agency's interpretation of a statute the agency is charged with enforcing, the Supreme Court has made clear that no deference is required when "an agency's statutory interpretation is contrary to the statutory language, or if the agency's interpretation undermines the Legislature's intent." In re N.J. Turnpike Auth. v. AFSCME, Council 73, 150 N.J. 331, 351 (1997). We conclude that such is the case here, and that PERC's determination that the unfair practice charge it issued concerns only internal union matters over which the Commission does not have jurisdiction is at odds with the guarantee of the Employer-Employee Relations Act.

Among the "comprehensive rights" afforded public employees in the Employer-Employee Relations Act is to have and "be protected in the exercise of, the right, freely and without fear of penalty or reprisal, to form, join and assist any employee organization."  See N.J.S.A. 34:13A-5.3; In re Hunterdon Cnty. Bd. of Chosen Freeholders, 116 N.J. 322, 327 (1989).  In order to maximize the protections provided public employees, the Act imposes on employee organizations, as well as public employers, the same prohibition against "[i]nterfering with, restraining or coercing employees in the exercise of the rights guaranteed to them" under the Act.  N.J.S.A. 34A-5.4a(1) and 5.4b(1).  The Act charges PERC with the "exclusive power . . . to prevent anyone from engaging in any unfair practice listed in" N.J.S.A. 34:13A-5.4 a and b.  N.J.S.A. 34:13A-5.4c.

PERC accepts as a "settled principle" that a union has considerable latitude in governing itself, and that the Commission "will not intercede in intra-union disputes unconnected to allegations and proof that an unfair practice has been committed."  I/M/O Teamsters Local 331 and Howard Charles McLaughlin, P.E.R.C. No. 2001-30, 27 N.J.P.E.R. ¶ 32,014, 2000 N.J. PERC LEXIS 85 at 5, 10 (2000).  The Commission reviewed the limits of its jurisdiction in disputes between a union and its members in Rinaldo, explaining it was without power "to enforce

union constitutions and by-laws[,] . . . referee or resolve internal union disputes unconnected to allegations and proof that an unfair practice has been committed[,] . . . [or] enforce the New Jersey Constitution as opposed to the statutory rights specifically granted by the New Jersey Employer-Employee Relations Act."  In re N.J. State PBA and PBA Local 199 (Rinaldo), P.E.R.C. No. 2011-83, 38 N.J.P.E.R. ¶ 8, 2011 N.J. PERC LEXIS 106 at 5-6 (2011).

> In contradistinction to all these broader disputes, our unfair practice jurisdiction over membership matters is statutorily confined under the Act we administer to two instances.  The first instance is where a majority representative violates its duty to represent its members fairly in contract negotiations and grievance processing, N.J.S.A. 34:13A-5.3; OPEIU Local 153 (Johnstone), P.E.R.C. No. 84-60, 10 N.J.P.E.R. 12 (¶15007 1983).  The second instance is where a majority representative arbitrarily, discriminatorily, or invidiously excludes or expels a negotiations unit employee seeking to participate in majority representative affairs affecting his or her employment conditions.  FOP Lodge 12 (Colasanti), P.E.R.C. No. 90-65, 16 N.J.P.E.R. 126 (¶21049 1991); PBA Local 199 (Abdul-Haqq), P.E.R.C. No. 81-14, 6 N.J.P.E.R. 384 (¶11198 1980).
>
> [Id. at 5-6.]

Our focus is obviously on the latter instance in which a union "arbitrarily, discriminatorily, or invidiously excludes or

expels" a member seeking to participate in union affairs affecting the member's working conditions.

The Hearing Examiner concluded that PERC was without jurisdiction to consider the complaint issued by the Director of Unfair Practices because appellants were "temporarily excluded — not expelled" from PANJ, and "[t]hus, charging parties have not provided facts giving rise to an examination of PANJ's internal membership matters through the Commission's unfair practice jurisdiction." The Commission affirmed, agreeing with the Hearing Examiner "that the Charging Parties were not expelled from PANJ and any alleged violations with respect to their suspensions fall outside our unfair practice jurisdiction. <u>Rinaldo</u>."

Neither <u>Rinaldo</u>, nor the decisions on which <u>Rinaldo</u> relies, however, compel the conclusion that PERC's jurisdiction is invoked only when a member is expelled or permanently excluded from union membership. Moreover, the language of the Employer-Employee Relations Act itself, which provides that "public employees shall have, and shall be protected in the exercise of, the right, freely and without fear of penalty or reprisal, to form, join and assist any employee organization," nowhere suggests that its protections could be so narrowly construed. See <u>N.J.S.A.</u> 34:13A-5.3, -5.4b(1).

Rinaldo involved the expulsion of a local PBA (Policemen's Benevolent Association) president who instituted litigation against other PBA members. At the time of his expulsion, his PBA chapter represented the superior corrections officers. Shortly after his expulsion, an FOP (Fraternal Order of Police) lodge replaced his PBA local as the superior officers' majority representative and Rinaldo became the FOP lodge's president.

PERC found Rinaldo was not entitled to relief because he was not expelled by his "majority representative," and, even if he had been, the action was not arbitrary because he was found to have violated an organizational rule. Rinaldo, supra, 2011 N.J. PERC LEXIS 106 at 8-9. In extrapolating its understanding of its unfair practice jurisdiction to Rinaldo, PERC relied on two prior cases: PBA Local 199 (Abdul-Haqq), P.E.R.C. No. 81-14, 6 N.J.P.E.R. ¶ 11,198, 1980 N.J. PERC LEXIS 141 at 14 (1980), in which it found an arbitrary rejection of an employee's application to a union to be an unfair practice, and FOP Lodge 12 (Colasanti), P.E.R.C. No. 90-65, 16 N.J.P.E.R. ¶ 21,049 1990 N.J. PERC LEXIS 168 at 7 (1990), in which it found that an arbitrary expulsion would be an unfair practice, although finding the expulsions there not arbitrary.

In Abdul-Haqq, the charging party, a corrections officer, was denied membership in his majority representative, Local 199.

Abdul-Haqq, supra, 1980 N.J. PERC LEXIS at 4. Although he suspected the union denied him membership based on a criminal conviction and his subsequent incarceration many years before, the union refused to give him any reason for denying him membership. He claimed that Local 199 violated N.J.S.A. 34:13A-5.4(b)(1) because it "interfered with, restrained and coerced him" in the exercise of his right, pursuant to N.J.S.A. 34:13A-5.3, to "form, join and assist any employee organization." Id. at 4. He argued that his exclusion from membership constituted an unfair practice because it deprived him of the opportunity to speak at union meetings, attempt to influence the organization's positions, vote for union officers and participate in other aspects of the union which "directly or indirectly affect the conditions of his employment." Id. at 8.

The union argued that PERC was without jurisdiction to hear the charge as it involved a purely internal union matter and that it had not violated section 5.4b(1), because there was no showing that it had acted in an arbitrary, discriminatory or invidious manner in denying the charging party membership in the union. Ibid.

The Commission rejected the union's claim that it was without jurisdiction to adjudicate the charge. It held that the "plain language of the Act gives Charging Party a right not to

be arbitrarily denied membership in the organization which determines (albeit in conjunction with his employer) what working conditions will be." Id. at 13. Thus, PERC concluded, N.J.S.A. 34:13A-5.3 establishes a right to membership in an employee's majority representative organization; and therefore, in denying the charging party membership without providing any explanation, Local 199 violated N.J.S.A. 34:13A-5.4(b)(1). Id. at 13-14.

In Colasanti, the charging parties alleged that the FOP violated section 5.4(b)(1) when it expelled them as a result of their work on the part of the PBA, which was trying to replace the FOP in a representation election. Colasanti, supra, 1990 N.J. PERC LEXIS 168 at 2. In rejecting the charging parties' arguments, the Commission explained that the court in Calabrese held that a union may expel "discordant elements in order that harmony may prevail," Calabrese v. Policeman's Benevolent Ass'n, Local No. 76, 157 N.J. Super. 139, 156 (Law Div. 1978), and that "the standard for testing such expulsions is whether they were arbitrary, capricious, or invidious." Colasanti, supra, 1990 N.J. PERC LEXIS at 6-7.

Relying on Calabrese, the Commission found that the charging parties' efforts on behalf of a rival union violated membership responsibilities and were disruptive of contractual

relations because the parties were campaigning against the union while remaining members with access to its strategy and tactics. Ibid.; see Calabrese, supra, 157 N.J. Super. at 154.

There is no indication in these decisions that an employee organization only "[i]nterfer[es] with, restrain[s] or coerc[es] employees in the exercise" of their right to "form, join and assist any employee organization" when the organization expels a member or denies an employee's application for membership. Nor is there anything explaining why only a permanent prohibition on assisting an employee organization can be considered an interference with an employee's rights under the Employer-Employee Relations Act.[2] The parties have not called to our attention, and we have not found, any decision by PERC or any state court that has drawn the distinction relied upon by the Hearing Examiner and the Commission here - that PERC has unfair practice jurisdiction to determine whether exclusions and expulsions, but not suspensions, are arbitrary, discriminatory or invidious.

N.J.S.A. 34:13A-5.4b(1) prohibits interference with a right guaranteed by the Employer-Employee Relations Act, and the Act

---

[2] Abdul-Haqq would actually suggest the opposite as the charging party in that case was not prohibited from reapplying for membership in the future. See Abdul-Haqq, 1980 N.J. PERC LEXIS at 6.

explicitly protects the right to "assist" in a labor organization, N.J.S.A. 34:13A-5.3. Here, both Tortoreto and Ghee were barred from participating in any union activities for a significant period of time, at least six months, in which they may have otherwise "assist[ed]" PANJ in affairs affecting their employment conditions. See N.J.S.A. 34:13A-5.3; Rinaldo, supra, 2011 N.J. PERC LEXIS at 5-6. Tortoreto was suspended for three years. He contends that his suspension "extend[s] beyond his lawful retirement," a fact of which the union was aware when it imposed the suspension.[3] Although we agree with the Commission that appellants' claims based on procedural irregularities in the union's disciplinary proceedings are internal matters over which the Commission lacks jurisdiction, we do not accept that their substantive claims can go unaddressed by PERC, the agency the Legislature charged with the "exclusive power . . . to prevent anyone from engaging in any unfair practice" listed in N.J.S.A. 34:13A-5.4a-b. N.J.S.A. 34:13A-5.2; N.J.S.A. 34:13A-5.4c.

We express no opinion on the merits of appellants' claims that they were arbitrarily and invidiously suspended by PANJ and prohibited from participation in the union's affairs in

---

[3] Tortoreto contends in the reply brief that the union has "determined that the unit may not decide whether he can return to membership until this case is over."

retaliation for their truthful allegations of mismanagement and fiscal irregularities in the course of their unsuccessful election campaign. We hold only that PERC has jurisdiction to consider the claim and that the allegations in the charge, if true, may constitute unfair practices and not internal union disputes that do not support even a potential violation of N.J.S.A. 34:13A-5.4b(1).

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION