**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2227-17T1

JUAN GRILES,

     Petitioner-Appellant,

v.

NEW JERSEY STATE
INTERSCHOLASTIC
ATHLETIC ASSOCIATION,

     Respondent-Respondent.

_____

Submitted February 13, 2020 – Decided May 21, 2020

Before Judges Nugent, Suter and DeAlmeida.

On appeal from the New Jersey Commissioner of Education, Department of Education, Docket No. 357-17.

Springstead & Maurice, Attorneys at Law, attorneys for appellant (Alfred F. Maurice, Harold N. Springstead and Lauren E. McGovern, on the briefs).

Parker McCay, PA, attorneys for respondent New Jersey State Interscholastic Athletic Association (Steven Phillips Goodell and Scott Thomas Miccio, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Commissioner of Education (Donna Sue Arons, Assistant Attorney General, of counsel; Geoffrey Nelson Stark, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Petitioner, Juan Griles, a high school basketball coach, appeals from a final decision of the Commissioner of Education ("Commissioner"). The Commissioner upheld the New Jersey State Interscholastic Athletic Association's ("NJSIAA") determination petitioner had violated the NJSIAA's "Recruitment Rule," for which the NJSIAA suspended petitioner from coaching for two years, fined him $1000, and required him to undergo additional training. Our standard of review requires we affirm an agency's decision unless it is arbitrary, capricious, unreasonable, or unsupported by substantial credible evidence in the record. In re Stallworth, 208 N.J. 182, 194 (2011). Having reviewed the record in light of this standard, and having concluded the Commissioner's final decision is neither arbitrary, capricious, unreasonable, nor without support in the record, we affirm.

The NJSIAA is "an independent voluntary association of the boards of education of local school districts as well as private schools who have elected to join the association for the coordination and regulation of athletic programs

in conjunction with other school districts." B.C. ex rel. C.C. v. Bd. of Educ., 220 N.J. Super. 214, 234 (App. Div. 1987). Eastside High School in the Paterson School District is a member school of the NJSIAA. Petitioner coached the Eastside men's basketball team.

The NJSIAA's bylaws prohibit "athletic recruitment." NJSIAA Bylaws, art. V, § 4 in part states:

> 1. Athletic recruitment is contrary to the purposes and objectives of high school sports. Prohibiting athletic recruitment helps to keep athletics in its proper place and subordinate to academics; protects student-athletes from those having interests that might not be consistent with the interests of the student-athletes; and maintains competitive equity on a level playing field among member schools.
>
> 2. Athletic recruitment is defined as any effort to proselytize, pressure, urge or entice a student to enroll in or transfer to a school for athletic purposes. It is a violation for a member school to engage in athletic recruitment or for a student-athlete to enroll or transfer to a school as a result of athletic recruitment. Athletic recruitment includes, but is not limited to:
>
> > a. Using mail, letters, brochures, or news media to compare high schools and to solely point out the athletic assets of the sender;
> >
> > b. Engaging in proselytizing interviews initiated by school personnel or associates;
> >
> > c. Offering athletic scholarships, free tuition or other monetary assistance, either from the school

3

directly or indirectly through some affiliated body or individual, to induce a student to attend the school for athletic reasons.

In February 2017, the media reported that petitioner was the temporary guardian of five or more basketball players from Puerto Rico and Nigeria, all either seventeen or eighteen years old, four of whom had enrolled at Eastside High since the previous September. Citing a school district database, the media report stated that five of the young men listed petitioner as their legal guardian and claimed his condominium as their primary address.

In response to the media reports, the Paterson School District retained the Honorable John E. Wallace, Jr., (retired), "to conduct an investigation of the boys' basketball program, and to make appropriate recommendations pertaining to policy, procedures, and personnel actions." In addition, the assignment "included monitoring of all district athletic programs to ensure compliance of district athletic programs with the [NJSIAA] Constitution, Rules and Regulations for the balance of this school year and for the 2017-201[8] school year." Justice Wallace completed the investigation and issued a report (the "Report").

The Report, which included an interview with petitioner, cited evidence—undisputed by petitioner—that petitioner indeed once had five student athletes

living at his condominium. Petitioner was the godfather and "surrogate godfather" to two of the young men. Petitioner took in two others at the request of a friend he knew from basketball camps. Petitioner took in the fifth at the request of "a former friend from when he played professional basketball."

Justice Wallace found no evidence petitioner's motive for housing the students "was other than humanitarian." Further, the retired Justice "found no evidence that [petitioner] obtained temporary custody of five students for any personal gain, financial or otherwise, offered inducement to the students, or recruited the students for an athletic advantage." Although the Report included findings petitioner had committed other violations of NJSIAA rules and regulations, it did not conclude petitioner violated the NJSIAA's Recruiting Rule.

Following the release of the Report, the NJSIAA's Controversies Committee scheduled a hearing. One week before the hearing, NJSIAA's counsel notified petitioner's counsel of the hearing "regarding potential violations of NJSIAA's rules regarding transfer, eligibility, and recruiting by the Eastside Paterson basketball program. Specifically, the hearing will address the findings of the . . . report regarding [the] investigation of the 2016-2017 Eastside Paterson Boys' Basketball Team."

The notice letter also informed petitioner's counsel of petitioner's right to appear, have counsel, present testimony under oath, cross-examine witnesses, and submit any relevant documentation. Last, the notice informed petitioner's counsel the Controversies Committee was authorized to impose penalties, suspend personnel, including coaches, and fine the member school and personnel, including coaches, in an amount not to exceed $1000. Petitioner did not respond to the notice, did not request an adjournment, and did not participate in the hearing.

Based upon the Report and other evidence presented at the hearing, the Committee determined that petitioner had, among other violations, violated the NJSIAA's Recruitment Rule. The Committee noted that when the media reports were published, petitioner had five students living with him, "and at least four of the five, at one point or another, actually played in games for Eastside." The Committee also noted two of the students were from Puerto Rico and two others were foreign students. The Committee found numerous violations concerning the five students, including the falsification of one of their transcripts. The Committee imposed the sanctions we have previously discussed.

The NJSIAA's Executive Committee unanimously affirmed the penalties imposed by the Controversies Committee. Petitioner appealed to the

Commissioner, who upheld the Committee's decision and sanctions. As the Commissioner noted in her decision:

> It is undisputed that the petitioner had multiple students living in his home who also became members of the basketball team that he coached. Many of the students had no connection to Paterson; their arrival in Paterson was facilitated through contacts the petitioner made in the basketball world; and they came to Paterson solely for the purpose of enrolling at Eastside High School. Moreover, none of the students who joined the basketball team for the 2016-2017 school year had transfer forms completed until after the media reports regarding the circumstances of their living situation were released. Importantly, the ban on athletic recruitment does not require a showing that the players received an athletic advantage or that they provided an actual athletic advantage to the basketball team, but simply that the players enrolled in the Paterson School District for an athletic reason.

Petitioner argues on appeal the Committee disregarded the Report when it reached a conclusion contrary to that of Justice Wallace. However, the scope of the Justice's charge was much broader than determining whether petitioner violated the Recruitment Rule. It is not entirely clear from the record before us that the Justice was specifically tasked with determining if petitioner violated the Recruitment Rule by making "any effort to proselytize, pressure, urge or entice a student to enroll or transfer to a school for athletic purposes." As the Commissioner pointed out, he never addressed that precise question.

A-2227-17T1

Further, the facts upon which the Justice based his decision, which were mostly undisputed, were subject to contrary interpretations and inferences. Indeed, Justice Wallace wrote, "[t]o be sure, the temporary guardianship of five student athletes by [petitioner], the basketball coach, at first blush raises suspicions whether he's doing this for an athletic advantage." As the Commissioner and the Controversies Committee noted, the inquiry they were required to address was whether petitioner "engaged 'any effort to proselytize, pressure, urge or entice a student to enroll in or transfer to a school for athletic purposes,'" not whether petitioner was attempting to gain an athletic advantage.

It appears from the Report that Justice Wallace reached his conclusion at least in part on his interview with petitioner. Petitioner chose not to appear before the Controversies Committee and attempt to persuade them that what appeared at first blush to be athletic recruiting was not the case.

Moreover, the Commissioner concluded that "[p]roviding housing for students who became members of his basketball team clearly meets the definition of recruitment." "The right of a voluntary association to interpret and administer its own rules and regulations is as sacred as the right to make them . . . ." James v. Camden Cty. Council No. 10, 188 N.J. Super. 251, 257 (Ch. Div. 1982); see also Danese v. Ginesi, 280 N.J. Super. 17, 23 (App. Div. 1995).

An appellate court "defer[s] to an agency's interpretation of its own regulations unless 'plainly unreasonable.'" Frazier v. Bd. of Review, 439 N.J. Super. 130, 134 (App. Div. 2015) (quoting In re Election Law Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010)).

Contrary to petitioner's arguments, the decisions of the Controversies Committee and Commissioner are supported by ample credible evidence on the record as a whole. The Committee and the Commissioner considered the Report but reached a contrary conclusion. For the reasons we have explained, neither the Committee nor the Commissioner rendered a decision that was arbitrary, capricious, or unreasonable.

Petitioner claims he was denied due process because he was only given two days' notice of the Controversies and Disputes Committee hearing, and was not provided with notice of the evidence that would be presented against him. Petitioner did not object to the notice when he received it, did not ask who would testify at the hearing, did not request a postponement, and did not appear at the hearing. He does not deny that he was notified of the hearing and provided with the opportunity to attend and present evidence. Given those circumstances, petitioner's argument is without sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

A-2227-17T1

To summarize, the Commissioner's decision is supported by sufficient credible evidence on the record as a whole, R. 2:11-3(e)(1)(D), and is not arbitrary, capricious or unreasonable. Petitioner's arguments to the contrary warrant no further discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2227-17T1